FRESHWATER ET AL., APPELLANTS, *v.* SCHEIDT ET AL., APPELLEES.

[Cite as *Freshwater v. Scheidt* (1999), 86 Ohio St.3d 260.]

---

(No. 97–1502—Submitted April 13, 1999—Decided September 1, 1999.)

*Arthur, O'Neil, Mertz & Bates Co., L.P.A., Rodney M. Arthur, Joseph W. O'Neil* and *Daniel R. Michel,* for appellants.

*Eastman & Smith, Ltd., Rudolph A. Peckinpaugh, Jr.,* and *John D. Wiley, Jr.,* for appellees Robert B. Scheidt, M.D., F.A.C.S., and Robert B. Scheidt, M.D., F.A.C.S., Inc.

*Robison, Curphey & O'Connell, E. Thomas Maguire* and *Timothy D. Krugh,* for appellee Paulding County Hospital.

*Leeseberg, Maloon, Schulman & Valentine* and *Geoffrey M. Wardle,* urging reversal for *amicus curiae,* Ohio Academy of Trial Lawyers.

*Buckingham, Doolittle & Burroughs, L.L.P.,* and *Carol A. Costa,* urging affirmance for *amicus curiae,* Ohio Association of Civil Trial Attorneys.

---

DOUGLAS, J. The central issue in this case concerns the extent to which statements from learned treatises and other publications may be used to impeach the testimony of expert witnesses. Prior to the promulgation of Evid.R. 706,[2] effective July 1, 1998, rules governing the use of learned treatises evolved under the common law. In *Hallworth v. Republic Steel Corp.* (1950), 153 Ohio St. 349, 41 O.O. 341, 91 N.E.2d 690, paragraph two of the syllabus, the court held that learned treatises, even though properly identified, authenticated, and recognized as standard authority, are not admissible in evidence to prove the truth of the matter asserted therein. Rather, "learned treatises are considered hearsay, may not be used as substantive evidence, and are specifically limited to impeachment purposes only." *Ramage v. Cent. Ohio Emergency Serv. Inc.* (1992), 64 Ohio St.3d 97, 110, 592 N.E.2d 828, 838, citing Giannelli, Ohio Evidence Manual (1989), Section 702.06, Author's Comment; *Piotrowski v. Corey Hosp.* (1961), 172 Ohio

---

2. Evid.R. 706, entitled "Learned treatises for impeachment," provides:

"Statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art are admissible for impeachment if the publication is either of the following:

"(A) Relied upon by an expert witness in reaching an opinion;

"(B) Established as reliable authority (1) by the testimony or admission of the witness, (2) by other expert testimony, or (3) by judicial notice.

"If admitted for impeachment, the statements may be read into evidence but shall not be received as exhibits."

As indicated in the Staff Notes to Evid.R. 706, the rule "codifies the common law rule, making it more readily accessible for trial use." The Staff Notes further provide that "[a] possible expansion of the common law rule concerns the use of judicial notice to establish the treatise as a reliable authority. A court taking judicial notice of *Gray's Anatomy* illustrates this aspect of the rule.

"The trial court decides under Evid.R. 104(A) if the treatise is a 'reliable authority' and Evid.R. 105 requires a limiting instruction upon request. If an opposing expert witness refuses to recognize a treatise as reliable, the judge may permit the impeachment subject to counsel's subsequent laying of the foundation through its own expert. There is no need to inform the jury of the trial court's determination."

St. 61, 15 O.O.2d 126, 173 N.E.2d 355; *Lambert v. Dally* (1972), 30 Ohio App.2d 36, 59 O.O.2d 29, 281 N.E.2d 857; and *Hallworth, supra.*

Later, in *Stinson v. England* (1994), 69 Ohio St.3d 451, 633 N.E.2d 532, this court set forth the conditions under which learned treatises can be used to impeach the credibility of expert witnesses. Counsel may use a learned treatise to impeach a testifying expert by establishing that the expert is either unaware of the text or unfamiliar with its contents. *Id.,* paragraph two of the syllabus. Additionally, the substance of a learned treatise can be used to impeach the credibility of an expert witness if the expert has relied upon the treatise in forming his or her opinion or the expert has acknowledged the authoritative nature of the treatise. *Id.*[3]

In *Stinson,* we determined that the trial court committed reversible error by permitting the cross-examination of an expert with the use of a medical treatise after the expert had stated categorically that he did not consider the text authoritative. Thus, "instead of impeaching the credibility of Dr. Warner [the expert], appellee was permitted to contradict his testimony through the use of the contents of the text despite his earlier testimony that it was not authoritative. This use constituted an impermissible presentation of hearsay evidence to the jury." *Id.,* 69 Ohio St.3d at 458, 633 N.E.2d at 539.

In the case at bar, both the trial court and court of appeals ruled that *Stinson* prevented appellants' counsel from cross-examining Scheidt and Zucker about the medical literature in question. On cross-examination, both Scheidt and Zucker would not explicitly concede the "authoritative" nature of the literature. Nevertheless, although Scheidt and Zucker refused to explicitly acknowledge the authoritative nature of the medical literature, they implicitly conceded as much. See *Jacober v. St. Peter's Med. Ctr.* (1992), 128 N.J. 475, 487, 608 A.2d 304, 311. Scheidt testified that he "hardly [knew] how to define authority," but that his teachers in the area of laparoscopic surgery were "helpful and useful," and that

---

3. In *Stinson v. England* (1994), 69 Ohio St.3d 451, 633 N.E.2d 532, paragraph two of the syllabus, we also held that "[t]he learned treatise exception to the hearsay rule set forth in Fed.Evid.R. 803(18) has no counterpart in Ohio Evid.R. 803." In Ohio, the use of learned treatises is limited to impeachment purposes only. *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 110, 592 N.E.2d 828, 838. Conversely, Fed.Evid.R. 803(18) allows treatises to be used as substantive evidence as an exception to the hearsay rule. See Weissenberger's Ohio Evidence Treatise (1999) 343, Section 706.1. Notably, a majority of the states have adopted Fed.Evid.R. 803(18) "in either words or substance." Walsh & Rose, Increasing the Useful Information Provided by Experts in the Courtroom: A Comparison of Federal Rules of Evidence 703 and 803(18) with the Evidence Rules in Illinois, Ohio, and New York (1995), 26 Seton Hall L.Rev. 183, at 229. Moreover, it appears that the federal rule has "enjoyed genuine success in the courtroom." *Id.* at 252. In this regard, we respectfully refer this matter to the Ohio Supreme Court Rules Advisory Committee to fully review Fed.Evid.R. 803(18) and, if appropriate, suggest a counterpart in Ohio Evid.R. 803, allowing treatises and other publications to be used as an exception to the hearsay rule.

he looked to his teachers for "helpful suggestions." He also stated that the courses pertaining to laparoscopic cholecystectomies "were certainly helpful to me." With respect to Zucker, he testified that Fitzgibbons was a "respected colleague," "I often will quote him," and that he was "a very honorable and honest individual with very good experience." Zucker further stated that he valued Fitzgibbons's "opinions and his expertise," and had "invited him to write a chapter in a textbook that I wrote on laparoscopic surgery." Zucker also testified that he had relied upon materials presented in the chapter in that he "used part of that [chapter] in coming up to my opinions in everyday practice as well as in this testimony."

In *Stinson*, we determined that it was error to allow the medical treatise to be used for impeachment purposes because a proper foundation had not been laid establishing the text as a reliable authority. However, *Stinson* was not intended to allow testifying experts to adroitly evade cross-examination simply by avoiding such words as "rely" or "authority" or any forms of those words. Indeed, if an expert witness relies upon published medical literature in forming his or her opinion, or the expert provides testimony sufficient to establish that the literature is reliable authority, or the literature is part of the expert's own publication, statements contained in the literature can be used for purposes of impeachment. The requisite reliance upon published medical literature or its authoritative nature can be established without an express acknowledgement by the testifying expert that he or she had relied upon the literature or that it is authoritative.

The testimony of Scheidt and Zucker established that the medical literature at issue was reliable authority. Moreover, testimony and other evidence in the record indicate that Scheidt and Zucker also relied upon the literature in forming their opinions. The literature was not offered by appellants' counsel as substantive evidence. Instead, the literature was intended to call into question the weight to be attached by the fact finder to the testimony of Scheidt and Zucker. In this regard, the restricted cross-examination of Scheidt and Zucker by the trial court harmed the fact-finding process and prevented the jury from adequately assessing the credibility of the witnesses.

Accordingly, we believe that, in this case, the trial court's decision to prohibit cross-examination with respect to the medical literature in question constituted prejudicial error. See Civ.R. 61 and R.C. 2309.59. Therefore, the judgment of the court of appeals is reversed, and the cause is remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., dissents.

_____

COOK, **J., dissenting.** While I agree with the rule announced by the majority, I do not agree that the record in this case supports the application of the rule and therefore would affirm the judgment of the court of appeals that the exclusion of the evidence was not an abuse of discretion.