The STATE of Ohio, Appellee,

v.

DePEW, Appellant.

[Cite as *State v. DePew* (1999), 136 Ohio App.3d 129.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 98CA2469.

Decided Dec. 6, 1999.

*Scott W. Nusbaum,* Ross County Prosecuting Attorney, and *Steven E. Drotleff,* Assistant Prosecuting Attorney, for appellee.

*David H. Bodiker,* State of Ohio Public Defender, and *Ben A. Rainsberger,* Assistant Public Defender, for appellant.

---

KLINE, Presiding Judge.

Joshua Q. DePew appeals the Ross County Court of Common Pleas' judgment finding him guilty of involuntary manslaughter. DePew asserts that the trial court prejudicially denied his constitutional right to cross-examine the state's medical expert when it barred him from using learned treatises to impeach the expert. Based upon the interpretation of Evid.R. 706 articulated by the Supreme Court of Ohio in *Freshwater v. Scheidt* (1999), 86 Ohio St.3d 260, 714 N.E.2d 891, we agree. DePew also asserts that the trial court erred by denying his request for a mistrial based upon the prosecutor's improper remarks. Our resolution of DePew's first assignment of error renders his second assignment moot, and we decline to address it pursuant to App.R. 12(A)(1)(c). Accordingly, we reverse the judgment of the trial court and remand this cause for a new trial.

I

The victim in this case, Jay Compher, engaged in more than one physical fight during the twenty-four hours preceding his death on June 14, 1998. That afternoon and evening, DePew attended a backyard cookout hosted by his family members. Throughout the afternoon, Compher taunted DePew and his family from behind the fence of a neighbor's yard. Witnesses observed that Compher's lip, knuckles and eye were cut, swollen, and blackened, and that he kept holding his head. Compher complained to his friends that his ribs hurt from a recent

fight. Immediately prior to his death, Compher screamed obscenities across the fence.

In response, DePew walked over to the fence and, at Compher's urging, entered the neighbor's yard. DePew punched Compher in the jaw. Compher fell onto his back, and then raised himself up onto his elbows. DePew punched Compher at least one more time, rendering Compher unconscious. Compher never regained consciousness.

DePew pled not guilty to involuntary manslaughter. At trial, the state called three medical expert witnesses. Dr. Yates opined that a blow to the head caused Compher's death. Yates testified that in the course of providing his opinion to the state and the defense in pretrial, he gave each party copies of a document written by Tatsuo and a document written by Leestma. Yates also stated that he considered those documents, as well as a document written by Spitz, to be learned documents or treatises. Dr. Gabis testified that Compher died within sixty seconds after receiving a blow to his head. Dr. Smith opined that Compher died within minutes of receiving a blow to the head.

DePew attempted to cross-examine Smith with statements contained in the Spitz document. When the state objected, the court held a bench conference. The court determined that, while DePew had established that the relevant documents were learned treatises, he did not establish that the documents constituted reliable authorities. Therefore, the court sustained the state's objection, and did not permit DePew to use the documents to impeach the state's medical experts. The parties stipulated on appeal that the objection, argument, and ruling by the court on this matter applied to all of the treatises that the defense established were learned.[1]

The jury found DePew guilty of involuntary manslaughter in violation of R.C. 2903.04. DePew appeals, asserting the following assignments of error:

I. "The court below erred by sustaining the state's objection and denying the defendant the right to cross-examine the state's expert witness with documents, pursuant to Ohio Rules of Evidence 706."

II. "The court below erred in not granting the defendant a mistrial due to prosecutorial misconduct during the closing argument."

---

1. The state argues in its brief that DePew only attempted to use the Spitz document before the state's objection, and that we therefore must confine our analysis to the Spitz document. Given the parties stipulation that the trial court's ruling applied to all the relevant documents, we find this argument disingenuous.

## II

DePew first asserts that the trial court erred by preventing him from using learned documents to cross-examine the state's expert, because Evid.R. 706 explicitly permits him to do so. A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant. *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056, 1058; *State v. Hymore* (1967), 9 Ohio St.2d 122, 38 O.O.2d 298, 224 N.E.2d 126. However, when a party challenges the trial court's construction of an evidentiary rule, he presents a question of law that we review *de novo. State v. Walker* (1999), 134 Ohio App.3d 89, 730 N.E.2d 419, citing *State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034, 1036.

Evid.R. 706, effective on July 1, 1998, codified the common law rule regarding using learned treatises for impeachment. *Freshwater* at 267, 714 N.E.2d 891, 896, fn. 2, citing Staff Notes to Evid.R. 706. The rule provides:

"Statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art are admissible for impeachment if the publication is either of the following:

"(A) Relied upon by an expert witness in reaching an opinion;

"(B) Established as reliable authority (1) by the testimony or admission of the witness, (2) by other expert testimony, or (3) by judicial notice.

"If admitted for impeachment, the statements may be read into evidence but shall not be received as exhibits."

The common law regarding the use of learned treatises for impeachment was set forth by the Supreme Court of Ohio in *Stinson v. England* (1994), 69 Ohio St.3d 451, 633 N.E.2d 532. In *Stinson,* the court determined that parties may use learned treatises to impeach the credibility of expert witnesses in two ways. First, a party may use a learned treatise to impeach an expert by establishing that the expert is unaware of or unfamiliar with the treatise. *Id.* at paragraph two of the syllabus. Second, a party may use the substance of the learned treatise to impeach an expert witness if the expert relied upon the treatise in forming his or her opinion or if any expert witness acknowledged the authoritative nature of the treatise on the record. *Id.*

In *Freshwater,* the Supreme Court construed Evid.R. 706 for the first time, and determined that it codifies the standard that the court articulated in *Stinson. Freshwater* at 267, 714 N.E.2d 891, 896, fn. 2. The court also clarified its decision in *Stinson,* explaining, "*Stinson* was not intended to allow testifying experts to

adroitly evade cross-examination simply by avoiding such words as 'rely' or 'authority' or any forms of those words." *Freshwater* at 269, 714 N.E.2d at 897.

The court went on to state that "if an expert witness relies upon published medical literature in forming his or her opinion, or the expert provides testimony sufficient to establish that the literature is reliable authority, * * * statements contained in the literature can be used for purposes of impeachment." *Id.* at 269, 714 N.E.2d at 896. Further, the court held that the authoritative nature of a medical treatise "can be established without an express acknowledgement by the testifying expert that he or she had relied upon the literature or that it is authoritative." *Id.*

In *Freshwater*, the record revealed that the medical experts deliberately refused to use the words "rely" or "authority," professing they were unclear on the meanings of those words. One expert even refused to acknowledge the authority of a second doctor's writing in a textbook that the two coauthored. We recognize that the circumstances are not analogous to this case. Here, the experts were cooperative; DePew simply did not ask the experts if they considered the proposed documents to be authoritative or reliable. Rather, DePew only asked whether the experts considered the documents learned. The trial court held that "learned" is not equivalent to reliable, and therefore it denied DePew the opportunity to cross-examine using the documents.

While the experts in this case did not adopt the uncooperative spirit of the experts in *Freshwater*, we believe that the interpretation of Evid.R. 706 that the state asks us to adopt would permit, and perhaps even encourage, a similar spirit of uncooperativeness in the future. Requiring a party to elicit the terms rely and authority from an expert before operation of Evid.R. 706 will strip the rule of its efficacy. Therefore, pursuant to the reasoning articulated in *Freshwater*, *supra*, we find that DePew's failure to elicit the terms rely and authority from the experts did not preclude DePew from using the documents for impeachment.

■ The state argues that, even if Evid.R. 706 does not require use of the terms rely or authority, DePew failed to present testimony establishing that the documents might be characterized as reliable authority. We disagree. DePew established that the documents he sought to use for impeachment were learned. Webster's Dictionary defines "learned" as "instructed, educated, * * * possessing or characterized by academic learning: erudite." Webster's Third New International Dictionary (1993) 1286. In addition, DePew presented evidence that Yates relied upon two of the documents by showing that Yates went so far as to provide those documents to the parties in conjunction with his opinion. Thus, we find that DePew presented testimony sufficient to establish, at minimum, that those two documents constitute reliable authority properly offered for impeachment pursuant to Evid.R. 706.

■ Finally, the state argues that the trial court's refusal to permit DePew to impeach its experts with the learned documents did not prejudice DePew. We disagree. The evidence in this case established that Compher died as a result of bleeding that occurred after a blow to the head. DePew did not deny that he punched Compher shortly before Compher died. DePew's defense rested on his theory that another individual caused Compher's fatal injury in a fight earlier that day. The state's experts opined that the fatal blow certainly occurred shortly before Compher died. DePew sought to cross-examine the experts with learned documents that suggested that, while many victims with a blow to the head die within minutes, others live up to three days after their injury.

The trial court's restriction of DePew's cross-examination of the state's experts prevented the jury from adequately assessing the credibility of the experts. Additionally, the trial court's ruling prevented DePew from exercising the full scope of his constitutional right to cross-examine witnesses. Therefore, we find that the trial court prejudiced DePew when it prevented him from using the learned documents to cross-examine the state's expert witnesses. Accordingly, we sustain DePew's first assignment of error.

## III

In his second assignment of error, DePew asserts that the prosecutor's remarks in closing argument amounted to prosecutorial misconduct. Our resolution of DePew's first assignment of error renders this question moot. Accordingly, we decline to address DePew's second assignment of error. See App.R. 12(A)(1)(c).

We reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.

EVANS, J., concurs.

HARSHA, J., concurs in part and dissents in part.

HARSHA, Judge, concurring in part and dissenting in part.

As a preliminary matter, I believe the proper standard of review to be "abuse of discretion." The determination of whether a treatise has been established as "reliable authority" is left to the trial court's discretion under Evid.R. 104(A). See staff notes; Weisenberger's Ohio Evid. (1999), Sections 706.1 and 706.3; Gianelli & Snyder, Baldwins Ohio Practice, Evidence (1996), Section 706.4. See also *State v. Allard* (1996), 75 Ohio St.3d 482, 663 N.E.2d 1277 and *State v. Heinish* (1990), 50 Ohio St.3d 231, 553 N.E.2d 1026.

Based solely upon the stipulation that the trial court's exclusionary ruling related to all three potential impeachment documents, I agree that the trial court erred in preventing use of the Tatsuo and Leestma articles. However, I cannot agree that this error requires reversal.

Initially, since the articles themselves were not proffered, we cannot determine if, in fact, they would have directly contradicted Smith's opinions. Specifically, we have no way of knowing if they state that with a tearing or shearing of the arteries as described by Yates, a patient could survive for more than a matter of minutes. The only evidence in this case is that upon autopsy one of two large arteries was discovered to be torn. The uncontroverted evidence revealed that this would cause rapid and voluminous blood flow into the cranial cavity. Thus, reported occurrences or opinions that a victim could survive for extended periods upon minor hemorrhaging would not be critical or damaging to Smith's opinion that death was almost contemporaneous with the blow that caused it. Without anyway of knowing if either the Tatsuo or Leestma articles actually contradict Smith's opinion given the uncontroverted factual nature of the injury, *i.e.,* a torn artery as opposed to broken veins or capillaries, we cannot not determine if the error was prejudicial.

Secondly, neither Yates or Gabis was impeached. Their testimony was consistent with Smith's. In fact, Gabis and to some extent, Smith, based their opinions on Yate's finding that a torn artery was the precipitating factor that caused cardio-pulmonary arrest. In sum, Smith's testimony really was cumulative, and because the two other experts were not confronted with the articles, their testimony remained unimpeached. Given that Ohio's learned treatise exception is limited to impeachment and cannot be used as substantive evidence, I cannot find prejudicial error in light of the cumulative nature of Smith's testimony.

Thus, I dissent.