LIMLE, Appellant,

v.

LABORATORY CORPORATION of AMERICA; Butt et al., Appellees.

[Cite as *Limle v. Laboratory Corp. of Am.* (2000), 137 Ohio App.3d 434.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 99AP–1007.

Decided May 2, 2000.

*McCarthy, Palmer, Volkema & Thomas, Michael S. Miller;* and *Jerry L. Maloon,* for appellant.

*James P. Triona,* for appellee, Ishrat J. Butt, M.D.

*T. Jeffery Beausay,* for appellee, Roy E. Manning, M.D.

---

TYACK, Judge.

On May 28, 1998, Anthony W. Limle, individually and as executor of the estate of decedent Joy E. Limle, filed a complaint against Laboratory Corporation of America ("LabCorp"), Ishrat J. Butt, M.D., Celes M. Bryant, C.T., and Roy E. Manning, M.D. Limle set forth claims for wrongful death, medical malpractice, and professional negligence. In essence, the complaint averred that the decedent's death was caused by the defendants' negligence. Specifically, it alleged that Dr. Butt, a pathologist and employee-agent of LabCorp, and Celes Bryant, a cytotechnologist and employee of LabCorp, failed to detect early signs of a malignancy on the decedent's Pap smear. Dr. Manning, the decedent's gynecologist, allegedly treated and evaluated the decedent in a manner below acceptable standards of care, including failing to sufficiently perform certain cervical biopsies.

On March 15, 1999, Limle filed a motion of voluntary partial dismissal pursuant to Civ.R. 41(A)(1)(a), dismissing LabCorp and Bryant without prejudice. A jury trial was held on the claims against Butt and Manning. The jury returned verdicts in favor of both Butt and Manning. A judgment entry was journalized on August 3, 1999. Limle ("appellant") has appealed to this court, assigning the following errors for our consideration:

1. The trial court erred to the substantial prejudice of the plaintiff–appellant in instructing the jury to disregard the testimony of the plaintiff–appellant's expert witness on the issue of proximate ca[u]se.

2. The trial court erred to the substantial prejudice of the plaintiff–appellant in submitting an interrogatory which required the jury to find that the defendant–appellee Dr. Butt was negligent not only in her interpretation of plaintiff–appellant's decedent, Joy Limle's, October 1993 Pap smear, but also in the recommendations she made for additional evaluation.

In his first assignment of error, appellant contends the trial court erred in striking and instructing the jury to disregard the testimony of his expert, Richard J. Stock, M.D., with regard to the decedent's survivability had negligence not occurred. At trial, Dr. Stock, a specialist in obstetrical, gynecological, and neonatal pathology, testified as to his opinion on several key issues, including whether Butt and Manning ("appellees") were negligent and the chance the decedent would have lived had negligence not occurred.

As to the issue of survivability, during appellant's case Stock testified that had the decedent been diagnosed properly in October/November 1993, her probability of survival would have been eighty to ninety percent. Stock also testified that had the decedent been properly diagnosed in October 1994, her chance of survival would have been slightly higher than fifty percent. On cross-examination, the following exchange occurred:

"Q.  * * * I can go back to the deposition if I had to, but I understood you stated, for you to be able to give the type of opinion you need to give here in this court, you had to go back and look at a few articles on this type of cancer, correct?

"A.  Yes, that's what I said."

After appellant had rested and after three defense witnesses had testified, counsel for Butt moved to strike all of Stock's testimony with regard to probability of survival. Defense counsel's basis for the motion was that Stock had admitted that his opinions on survival were based on a review of several medical articles not in evidence. Defense counsel argued that the medical articles should have been admitted into evidence so that they would be subject to cross-examination. The trial court agreed and instructed the jury to disregard Stock's testimony as to whether the decedent would have survived had she been diagnosed sooner. For the reasons that follow, we find the trial court erred in so instructing the jury.

■ As a threshold matter, appellees arguably waived any alleged error by failing to timely object to Stock's testimony on the chance of survival. As indicated above, defense counsel did not object to this testimony at the time it was elicited. Indeed, the objection was made much later. The failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal. *Goldfuss v. Davidson* (1997), 79 Ohio St.3d

116, 121, 679 N.E.2d 1099, 1103. In *State v. Johnson* (1989), 46 Ohio St.3d 96, 102, 545 N.E.2d 636, 642–643, the Supreme Court found untimely an objection that was not made contemporaneously with the alleged improper comments. Here, appellees should have objected at the time Stock engaged in the alleged improper testimony, and that failure arguably precludes appellees from raising the issue on appeal. However, even assuming appellees have not waived the issue, we find that the trial court otherwise erred in striking this testimony.

As indicated above, the basis for Butt's objection was that Stock had relied upon medical articles to form his opinion as to the decedent's survivability and that those articles should have been admitted into evidence by appellant. However, textbooks and other learned treatises are considered hearsay in Ohio, may not be used as substantive evidence, may not be admitted into evidence to prove the truth of the matter asserted, and are specifically limited to impeachment purposes only. *Freshwater v. Scheidt* (1999), 86 Ohio St.3d 260, 267, 714 N.E.2d 891, 896, citing *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 110, 592 N.E.2d 828, 837–838. Hence, contrary to defense counsel's assertion at trial, appellant could not have admitted the articles, and the trial court erred in striking the testimony based on that failure.

Appellees further contend that the trial court properly struck Stock's opinions on the chance of survival because they were based solely on the articles and were improper. First, Stock's opinion as to the decedent's chances of surviving had she been diagnosed sooner was not based solely on the articles. The excerpt quoted above cannot be taken out of context, and Stock clearly based his opinion testimony on the facts of the underlying case as well.

Further, no party disputes that Stock was an expert. An expert is a witness who may testify at trial because of special, scientific, or technical knowledge that will assist the trier of fact. *State v. Minor* (1988), 47 Ohio App.3d 22, 24, 546 N.E.2d 1343, 1347. As such, an expert necessarily brings to each case knowledge of facts and data that are not in evidence. *Id.* To the extent an expert applies to the facts in evidence a scientific principle, theory, calculation, measurement, or table, they need not be in evidence if the predicate facts are in evidence. *Id.*

In *Steinfurth v. Armstrong World Indus.* (1986), 27 Ohio Misc.2d 21, 22, 27 OBR 206, 207–208, 500 N.E.2d 409, 411–412, the Cuyahoga County Court of Common Pleas put it aptly when it stated that experts have always been permitted to testify regarding the information that forms the basis of their opinions and that that information may include review of applicable treatises, formal classes, discussions with colleagues, reading of books of science, and information gained from other experts in the field. These "science items" are

perceived by the expert witness, and, therefore, the testimony complies with Evid.R. 703. *Id.*

Stock never quoted from or indicated the titles of the articles. Rather, he merely gave his opinion as to the decedent's chance of survival had negligence not occurred. Only upon cross-examination was Stock questioned about the articles. At that time, pursuant to Evid.R. 706,[1] defense counsel could have cross-examined Stock, for impeachment purposes, using actual statements from the articles. See *Freshwater* at syllabus.

As a final matter, we reject Manning's assertion that any error was essentially harmless, as another expert gave similar survivability testimony. This court has reviewed the testimony of defense expert, Jeffrey G. Bell, M.D. Bell's testimony as to chances of survival was similar to Stock's in some respects. However, it was not so similar that the erroneous striking of Stock's testimony could be considered nonprejudicial.

For all of the foregoing reasons, the trial court erred in striking the testimony of Stock as to chances of survival and in instructing the jury to disregard it. Accordingly, appellant's first assignment of error is sustained.

In his second assignment of error, appellant contends that the trial court erred in submitting a certain interrogatory to the jury. Appellant contends that the interrogatory was not based upon the evidence. Interrogatory No. 3 addressed the alleged negligence of Butt and stated:

"Did you find by the preponderance of the evidence that Defendant Ishrat Butt, M.D. was negligent in her interpretation of the October, 1993, pap smear of Plaintiff's decedent, Joy Limle, and the recommendations she provided for additional evaluation?"

Appellant contends that it was wrong to require both a finding of negligence in Butt's interpretation and in Butt's recommendations. Appellant's basis for that contention is that his claim against Butt was, and the evidence supported a finding, that had Butt correctly reported the presence of high-grade squamous intraepithelial lesion ("HGSIL") rather than low-grade squamous intraepithelial lesion ("LGSIL") from the 1993 Pap smear, Dr. Manning would have taken additional measures that probably would have resulted in a timely diagnosis of decedent's cancer, and that the failure proximately caused decedent's death. Appellant further asserts he did not allege, and the jury was not required

---

1. Evid.R. 706 states: "Statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art are admissible for impeachment if the publication is either of the following: (A) Relied upon by an expert witness in reaching an opinion * * *. If admitted for impeachment, the statements may be read into evidence but may not be received as exhibits."

to find, that Butt was also negligent in her recommendations to Manning for follow-up. Therefore, appellant argues that the interrogatory should not have been submitted, as it required that the jury find both in order to find Butt negligent.

A trial court retains limited discretion to reject proposed interrogatories that are ambiguous, confusing, redundant, or otherwise legally objectionable. *Ziegler v. Wendel Poultry Serv., Inc.* (1993), 67 Ohio St.3d 10, 15, 615 N.E.2d 1022, 1028, overruled on other grounds in *Fidelholtz v. Peller* (1998), 81 Ohio St.3d 197, 690 N.E.2d 502, syllabus. Proper jury interrogatories must address determinative issues and must be based upon the evidence presented. *Id.* at 15, 615 N.E.2d 1022, citing *Ramage, supra,* at paragraph three of the syllabus.

Butt asserts that the interrogatory conformed directly to the evidence. Specifically, Butt points to the testimony of her expert, Susan Selvaggi, M.D., that Butt met the standard of care in interpreting the 1993 Pap smear as containing LGSIL. However, this court has reviewed the transcript and finds that Selvaggi's testimony, read as a whole and in context, could be taken as indicating that Butt met the standard of care not because she properly interpreted the 1993 Pap smear, but because Butt's follow-up recommendations were proper. Selvaggi's pertinent testimony is as follows:

"Q. What was your interpretation of that 1993 Pap smear of Joy Limle?

"A. * * * There were numerous low-grade cells in the background, and also in one of the slides there were balls of cells, which, in my opinion, represent a high-grade squamous intraepithelial lesion.

" * * *

"Q. Now, after you reached your conclusions and interpretations as to those two slides, did you then have an opportunity to review Dr. Butt's interpretation and recommendation involving those '93 Pap smears, that '93 Pap smear?

"A. Yes, I did.

"Q. Her interpretation is different from yours, isn't it?

"A. Yes.

"Q. She interpreted this as low grade?

"A. Yes, she did.

"Q. Now, Doctor, based upon you education, which we'll get to in a few minutes, trained and Board-certified anatomic pathologist with specialty in cytopathology, do you have an opinion to a reasonable probability whether Dr. Butt's interpretation and recommendation met the standard of care in 1993?

"A. In my opinion, it met the standard of care.

"Q. Now, how is it that she can call this abnormal Pap smear a low-grade squamous intraepithelial lesion, if you, in addition, also see high-grade squamous intraepithelial lesions, that you can say she met the standard of care?

"A. In my opinion, it's a matter of degree. For example, some people may report them as low-grade, and sometimes you see a few high-grade cells. *I think the important thing that Dr. Butt did was the following. She just didn't stop. In addition to giving her diagnosis, she gave a recommendation that a colposcopy be done on this patient, which we know is actually looking at the cervix, and then biopsying any area that was found to be abnormal by the gynecologist.*" (Emphasis added.)

There was evidence to support appellant's claim that had Butt correctly interpreted the 1993 Pap smear and reported the correct results to Manning, even if Butt's recommendations remained the same, Manning would have taken more aggressive measures to diagnose and treat the decedent. Further, there was evidence that Butt fell below the standard of care in failing to properly interpret the 1993 Pap smear. Interrogatory No. 1 stated that if six or more of the jury answered "No" to the interrogatory, then the jury shall enter a verdict in favor of Butt. The interrogatory was faulty because it required the jury find Butt negligent both in her interpretation and recommendations. Because the evidence was such that Butt could have been found negligent solely because of her interpretation of the 1993 Pap smear, the interrogatory should not have been submitted.

Accordingly, appellant's second assignment of error is sustained.

Having sustained both of appellant's assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand this cause to such court for further proceedings consistent with law.

*Judgment reversed*
*and cause remanded.*

BOWMAN, P.J., and KLINE, J., concur.

ROGER L. KLINE, J., of the Fourth Appellate District, sitting by designation in the Tenth Appellate District.