DECISION.
Plaintiffs-appellants Jill and Michael Gartner, individually and on behalf of their minor daughter Haley, appeal the judgment of the trial court entered on a jury's verdict in favor of the defendants in a medical malpractice action. Defendants-appellees are Dr. Richard Hemmer, an emergency-room physician at Mercy Hospital Anderson, Mercy Hospital Anderson ("Mercy"), and Qualified Emergency Specialists, Inc. ("QES") (Dr. Hemmer's employer). Concluding that the trial court improperly excluded expert testimony, we reverse the judgment below.
On the evening of April 15, 1995, the Gartners sought medical attention for their five-month-old daughter, Haley, at Mercy's emergency room after Haley had vomited twice and had developed a high fever. At the emergency room, Haley's symptoms included vomiting, lethargy, extreme irritability, crying and a fever of 103.5 degrees. Dr. Hemmer was the emergency physician on duty that evening. Upon his examination of Haley, he ordered a chest x-ray to rule out pneumonia, a urinalysis, a complete blood-cell count and a blood culture to test for bacteria. The results of the blood culture did not come back before the Gartners left the emergency room. The other blood tests revealed a white-blood-cell count of 16,400 per cubic millimeter and an elevated number of segmented neutrophils, both of which might have indicated an infection. But Dr. Hemmer specifically ruled out an ear infection, a recurring condition for Haley.
Dr. Hemmer administered Tylenol to Haley, which reduced her temperature by two degrees, and Haley eventually became less irritable. In light of Haley's lower temperature, a lack of a focus for infection, and the time of year (April, a month when many patients developed viruses), Dr. Hemmer sent Haley home with instructions to keep administering Tylenol and fluids for the fever. Dr. Hemmer testified that, based on Haley's presentation at that time, he had determined that she had a viral infection, and so he had not prescribed any antibiotics. Dr. Hemmer instructed the Gartners to contact their family pediatrician for follow-up and to return to the hospital if Haley's condition worsened.
The Gartners called the emergency room twice that night because of their concern that Haley's fever had remained at 101 degrees. Dr. Hemmer did not instruct them to return to the emergency room that night. The next morning, the Gartners made an appointment with their pediatrician for later that day. The pediatrician examined Haley and sent her to Children's Hospital. At Children's, the emergency-room physician performed a lumbar puncture that revealed that Haley had developed bacterial meningitis. Haley was given antibiotics at that time and was admitted to the hospital. As a result of seizures experienced by Haley, she was hospitalized for eleven days. Children's Hospital eventually determined that Haley had suffered brain damage that had permanently impaired her cognitive, visual and hearing abilities.
The Gartners brought a medical malpractice action against Dr. Hemmer, Mercy and QES, claiming that Haley's presentation at Mercy's emergency room indicated that she had an infection, and that if antibiotics had been administered at that time, it would have likely prevented the development of meningitis. The issues at trial were whether Dr. Hemmer had deviated from the standard of care by failing to administer antibiotics to someone who presented in Haley's condition, and whether, if antibiotics had been administered at that time, they would have been effective in preventing the development of meningitis. After hearing all of the evidence, the jury returned a verdict in favor of Dr. Hemmer, QES and Mercy. In this timely appeal, the Gartners now bring forth five assignments of error.
In their first assignment of error, the Gartners maintain that the trial court erred in excluding the testimony of their pediatric infectious-disease expert, Dr. Harold Raucher. Dr. Raucher's opinion testimony was proffered in the record for our review. Dr. Raucher would have testified that Haley's presentation at the emergency room indicated a possible bacterial infection; that Dr. Hemmer had deviated from the appropriate standard of care by failing to administer antibiotics; and that the failure to administer antibiotics was the proximate cause of the onset of meningitis and the resulting injuries suffered by Haley. In reference to proximate cause, Dr. Raucher would have testified as to the efficacy of antibiotic therapy in preventing the onset of meningitis in a child who presented as Haley did, i.e., an infant with a high fever, no identified source of infection, and a white blood count of 16,400.
The defendants moved to exclude Dr. Raucher's testimony at trial, arguing that his opinion was improperly based solely on two medical articles in violation of Evid.R. 703. They cited to portions of Dr. Raucher's deposition testimony that, they believed, supported their assertion:
 Defense Counsel: And with respect to your only criticism of Dr. Hemmer, his failure to treat with antibiotics, what is the basis of that opinion?
 Dr. Raucher: The basis is that there are studies in the literature that first, you know, define which child is at risk of having bacteria in the bloodstream in this very setting that this child was in and there are numerous studies that would show that this child was in one of those higher risk groups of having pneumococcal bactermia or occult bactermia with any bacteria; pneumoccus happens to be the most common one by far. There are also studies that show that treating these children can change their chance for sequella or coming back with meningitis or pneumonia or those, but there are some.
 Defense Counsel: Can you cite any of the studies that you're referring to?
 Dr. Raucher: I believe in the folder that you saw I had pulled out two of those. Would you like me to read them into the record?
 Dr. Raucher then read the titles of two articles into the record. Both articles went to the heart of proximate cause, as each discussed the efficacy of antibiotics in treating pediatric patients with suspected and unsuspected bactermia. The following exchange then occurred:
 Defense Counsel: Did you rely upon those articles in formulating your opinion with respect to Dr. Hemmer's deviation from the standard of care?
 Dr. Raucher: No. I ___ in fact, I just looked at these in preparation for this deposition. I thought I would freshen up on in case I was asked statistics and numbers, that I would be fresh: instead of saying "Approximately this" and "Approximately that," I would have it fresh in my mind. But my opinion was totally without this information.
 Defense Counsel: But those articles provide a basis for your criticism of Dr. Hemmer?
Dr. Raucher: I believe so, yes.
* * *
 Defense Counsel: Can you tell me how Dr. Hemmer's treatment of Haley relates to the proximate cause of her damages?
 Dr. Raucher: Well, I think this is a very similar answer to the previous ones, the earlier you start treatment, the better. There are statistics in these articles that show that if you have children with penumococcal bactermia, as this child did, that the group that gets intramuscular antibiotics comes back with meningitis and positive blood cultures less so than the groups that are not treated. For this I think there is evidence. You know, these numbers have been compiled.
 When asked if he had given all of the grounds for his opinion, Dr. Raucher stated,
 [T]he basis for my opinion is mostly my memory and understanding of the compilation of textbooks and literature on this subject that is quite extensive over the last 15, almost 20 years. This has been a hot topic. And my opinion is based on the whole synthesis of that.
 After reviewing the deposition testimony, the trial court conducted a voir dire of Dr. Raucher. During voir dire, Dr. Raucher testified that the defense may have misunderstood his deposition testimony, but that his opinions were based on a combination of his experience, training, education and a synthesis of the medical literature. He testified that he had not relied on any specific article for his testimony, and that he was using the term "basis" in his deposition testimony to mean that the articles "supported" his opinion, not that he had reviewed the articles and then had formed his opinion as to the efficacy of antibiotic therapy in preventing meningitis. Furthermore, the record demonstrates that Dr. Raucher, in addition to his experience and education, also relied on the medical records admitted into evidence to form his opinion that antibiotics would have been effective in preventing meningitis in Haley.
After taking those factors into consideration, the trial court refrained from ruling on whether Dr. Raucher had relied on the two specific articles to form his opinions, but concluded that Dr. Hemmer had more expertise concerning which children were at risk for having bactermia, which related to the standard-of-care issue, than he had with respect to the treatment of infections, which related to the proximate-cause issue. Based on that assessment, the trial court provided the Gartners with another opportunity to lay a foundation for Dr. Raucher to testify on these issues, indicating that it wanted to hear information regarding Dr. Raucher's education, training and personal experience.
During his second voir dire, Dr. Raucher testified that he had graduated from a reputable medical school with the highest academic standing in his class, and that he was board-certified in pediatrics and pediatric infectious diseases. He had been in practice since 1982, examining approximately forty to one hundred children a week. During his residency in pediatrics and his fellowship in pediatric infectious diseases, he had examined many children who had presented with a fever without a source of infection and also had experience in diagnosing children with bactermia and in treating them with antibiotics. With reference to his private practice, he testified that he treated children almost every day with antibiotics and had seen the outcome of that mode of treatment. He testified that he currently taught in the field of pediatric infectious diseases in clinical settings. Dr. Raucher also testified that although he did not rely on any specific article to form his opinion regarding whether antibiotic therapy was efficacious in the prevention of meningitis in this particular clinical setting, "[his] opinions c[a]me from a whole host of sources. I'd be silly to say I haven't read textbooks and read articles and had discussion with other people. That, you know, that's part of my training, as well as taking care of patients." Finally, Dr. Raucher testified that, based on his training and experience, he could give "general probabilities" in regard to proximate cause without relying on any statistics in any specific medical article.
After that testimony, the trial court still did not rule on whether Dr. Raucher had the qualifications to testify as an expert witness regarding proximate cause, so it again allowed the Gartners the opportunity to lay a foundation for his testimony at trial in front of the jury. Again Dr. Raucher testified about his education, training and experience in his personal practice. When asked for his opinion regarding standard of care and proximate cause, the defense objected, arguing that his testimony was inappropriately based on two specific medical articles. The trial court prohibited Dr. Raucher from testifying, finally stating at a sidebar conference that it did not believe that Dr. Raucher had the expertise to testify because his opinion was based solely on two medical articles, and that his personal experience did not show that he had any specialized knowledge that qualified him as an expert. The trial court also stated that it did not believe that Dr. Raucher was familiar with the standard of care applicable to an emergency-room physician.
Evid. R. 702 governs the admissibility of expert testimony and generally provides that a witness may testify as an expert if (1) the testimony relates to matters beyond the knowledge or experience of laypersons or dispels a common misconception among lay-persons; (2) he or she is qualified as an expert by virtue of specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; and (3) the testimony is based upon reliable scientific, technical, or other specialized information.[1] Pursuant to Evid.R. 104(A), the trial court determines whether an individual qualifies as an expert, and that decision will not be overturned absent an abuse of discretion.[2]
In reference to the first condition for admissibility, there is no argument that Dr. Raucher's testimony, if it had been admitted, would have related to medical matters beyond the knowledge of laypersons. In regards to the second condition, we are persuaded that the record demonstrates that Dr. Raucher had specialized knowledge, skill, experience, training and education to qualify as an expert with respect to the standard-of-care and proximate-cause issues. Dr. Raucher was board-certified in both pediatrics and pediatric infectious diseases and taught in the field of pediatric infectious diseases, which included the diagnosis and treatment of meningitis. The trial court, in reference to Dr. Raucher's qualifications, even stated that it was convinced that Dr. Raucher was an expert in "[pediatric] infectious diseases," but that it would not allow his testimony with respect to proximate cause because of his lack of hands-on experience. But Dr. Raucher testified that he had treated hundreds and hundreds of children presenting with a fever and bactermia, that he had treated them with antibiotics, and that he had observed the outcome of that mode of treatment. He further testified that he had evaluated children who had presented with a fever, but had not been treated with antibiotics when initially seen by a physician, and that he had observed the effects of that form of treatment. He also testified that he knew what kinds of antibiotics were effective against various bacteria, including those that developed into meningitis.
With respect to the standard of care, Dr. Raucher testified during voir dire that a majority of his residency in pediatrics and his fellowship in pediatric infectious diseases included evaluating children in an emergency-room setting. Further, he had also worked in the emergency rooms of two New York City hospitals following his fellowship. Although he had not "manned" a shift in an emergency room in fifteen years, he testified that he frequently saw his patients in the emergency room, with the most recent time having been approximately a week before he testified in this trial. Finally, Dr. Raucher testified that he frequently consulted with emergency-room doctors on the diagnosis of children's illnesses, and that emergency-room doctors and pediatricians reviewed and were familiar with much of the same medical literature. Based on the foregoing, we are convinced that Dr. Raucher had sufficient specialized experience and training to qualify him as an expert who could properly testify as to the standard-of-care and proximate-cause issues in this case. We note that if the defendants had believed that there were any weaknesses in Dr. Raucher's body of experience or expertise, then this could have been "exposed on cross-examination in an effort to affect the weight that the trier of fact [would] accord to [his] testimony."[3]
The third condition for admissibility requires a determination whether the expert's opinion testimony has a "reliable basis in the knowledge and experience of his discipline."[4] The defendants assert that Dr. Raucher's testimony had an unreliable basis because it came solely from statistics contained in two medical articles not in evidence. To evaluate this issue, we turn to Evid.R. 703.
Evid.R. 703 provides that "the facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." Under this rule, as compared to Fed.Evid.R. 703, an expert may not base his opinion exclusively upon other experts' opinions or hearsay evidence because that is considered unreliable. In Ohio, textbooks and learned treatises, including articles published in a medical journal, are considered hearsay and may not be used as substantive evidence, but may be used to impeach an expert's credibility when the expert has relied upon a treatise or explicitly acknowledged it as an authority.[5] Consequently, an expert is not permitted in his testimony to directly quote from or recite the conclusions of a learned treatise or a medical article.[6]
The defendants correctly argue that the statistics in the two medical articles that Dr. Raucher allegedly relied on to form his opinions as to the standard of care and proximate cause were hearsay and thus inadmissible. Although Dr. Raucher paraphrased the findings of the two medical articles in his deposition testimony when giving his opinion, he did not directly quote the studies, and he indicated that he would not cite to them during his testimony in front of the jury. We note that he did not recite conclusions from these two articles in his voir dire testimony, and that he unequivocally testified that he had not relied on the two specific articles to form his opinion that antibiotics would have been effective in preventing the onset of meningitis in Haley. His deposition testimony demonstrated that he misunderstood the word "basis," using it to mean that the cited articles supported his opinion, not that they solely gave rise to his opinion.
Additionally, Dr. Raucher testified that he could testify to "general probabilities" without reference to the two articles. His experience and education in the field of pediatrics and pediatric infectious diseases demonstrated that. Finally, Dr. Raucher explicitly testified at his deposition and during voir dire that he had relied on a synthesis of medical literature that he had reviewed, as well as his experience, training and education, and the medical records of Haley, in reaching his opinions as to whether Dr. Hemmer had deviated from the standard of care by not recognizing that Haley's presentation indicated a possible bacterial infection and, thus, by failing to administer antibiotics, and whether that deviation was the proximate cause of the onset of meningitis in Haley.
A review of the record reveals that, during voir dire, the trial court was attempting to limit the basis of Dr. Raucher's opinion to his personal experience in the field of pediatrics. Dr. Raucher was permitted to testify that he kept current on the state of medical knowledge in the field of pediatrics, but he was not allowed to indicate that his opinion was partially based on a synthesis of medical literature. An expert's opinion that is partially based on a synthesis of medical literature is not improper.[7] This court has held that an expert's testimony may be partially based on "knowledge gained from other experts in the field, whether this knowledge was communicated orally or in writing * * *. Otherwise, experts would be limited to hands-on experience to form the basis of their opinions this has never been the case."[8]
Consequently, the information gained from other experts in the field are science items that have been "perceived" by the testifying expert witness in compliance with Evid.R. 703.[9] As Dr. Raucher testified that his opinions were partially based on his synthesis of the medical literature from the past fifteen to twenty years discussing the efficacy of antibiotic treatment of children presenting as Haley did, his testimony was based on knowledge and data perceived by him and, thus, reliable and in compliance with Evid.R. 702(C) and 703.
Based on the record presented for our review, we hold that Dr. Raucher's background qualified him to testify as an expert and that his opinions were based on reliable specialized knowledge and experience, and not solely on two medical articles. As the trial court's decision to exclude the testimony of an otherwise qualified expert witness was unreasonable, we hold that it abused its discretion in ruling that Dr. Raucher was not properly qualified to testify as a medical expert.
The defendants argue that even if the trial court's exclusion of the testimony was erroneous, it was not prejudicial because the Gartners' emergency-medicine expert, Dr. Abramson, provided the substance of Dr. Raucher's excluded testimony. We have reviewed the entire record, including Dr. Abramson's testimony, and, under the circumstances of this case, we hold that the exclusion of Dr. Raucher's testimony was prejudicial. The first assignment of error is sustained.
The remaining assignments of error deal with other evidentiary rulings made by the trial court. In light of our resolution of the first assignment of error, these remaining assignments of error are rendered moot.[10] The judgment of the trial court is, accordingly, reversed, and this cause is remanded for further proceedings in accordance with law.
Judgment reversed and cause remanded.
Doan, P.J., and Gorman, J., concur.
[1] Nichols v. Hanz (1996), 110 Ohio App.3d 591, 597, 674 N.E.2d 1237,1240-1241.
[2] See State v. Awkal (1996), 76 Ohio St.3d 324, 667 N.E.2d 960.
[3] Fugett v. Harris (1995), 107 Ohio App.3d 415, 669 N.E.2d 6; 1 Weissenberger's Ohio Evidence (2002) Section 702.4.
[4] Kumho Tire Co. v. Carmichael (1999), 526 U.S. 137, 138,119 S.Ct. 1167, 1169; Evid.R. 702(C).
[5] Freshwater v. Scheidt (1999), 86 Ohio St.3d 260, 267,714 N.E.2d 891, 869; Evid.R. 706.
[6] Pool v. Wade (1996), 115 Ohio App.3d 449, 456, 685 N.E.2d 791,795.
[7] Limle v. Laboratory Corp. of Am. (2000), 137 Ohio App.3d 434,738 N.E.2d 890.
[8] State v. Echols (1998), 128 Ohio App.3d 677, 716 N.E.2d 728,
[9] Steinfurth v. Armstrong World Industries (1986), 27 Ohio Misc.2d 21,500 N.E.2d 409.
[10] See App.R. 12(A)(1)(c).