JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Charlene Beard ("Beard"), Administratrix of the Estate of Ralph Moss, deceased, appeals from the judgment entered upon a jury verdict in the Cuyahoga County Court of Common Pleas, which entered judgment on a medical malpractice claim in favor of appellee Oscar Nicholson, Jr., M.D. ("Dr. Nicholson"). For the reasons adduced below, we reverse and remand for a new trial.
 {¶ 2} The following facts give rise to this appeal. In April 2000, Dr. Nicholson diagnosed Ralph Moss with a ventral hernia. Because Mr. Moss was undergoing chemotherapy for colon cancer, it was determined that surgery could not be performed until six to eight weeks after the chemotherapy was completed. This time period was to allow the effects of chemotherapy to disappear as well as to allow the bone marrow cells to regenerate. Mr. Moss also had a history of cardiac and respiratory medical problems.
 {¶ 3} Mr. Moss completed chemotherapy on or about October 17, 2000, and his surgery was scheduled for December 12, 2000. The surgery was an elective procedure; the hernia did not require urgent repair.
 {¶ 4} On December 12, 2000, Dr. Nicholson performed the hernia repair on Mr. Moss. At the time of the surgery, Mr. Moss had a white blood cell count of 2,300. The reference range for a normal white blood cell count was 4,500 to 11,000.
 {¶ 5} Following the surgery, Mr. Moss developed several complications. Mr. Moss experienced shortness of breath, abdominal pain, and abdominal distention. He underwent a CAT scan that revealed a dilated small bowel, collapsed colon, and partial lung collapse. Mr. Moss was transferred to the intensive care unit and placed on a ventilator. Eventually, Mr. Moss was taken back to surgery. He had a perforated bowel and had developed intra-abdominal sepsis. Mr. Moss died on December 17, 2000, from multiple organ system failure.
 {¶ 6} Beard brought a medical malpractice action against Dr. Nicholson.[1] The case proceeded to a jury trial and was decided in favor of Dr. Nicholson. During the trial, Dr. Nicholson testified as to the standard of care for performing surgery on Mr. Moss when his white blood cell count was 2,300. Counsel for Beard objected on hearsay grounds to testimony of Dr. Nicholson that referenced medical literature as the basis for his opinion. The trial court overruled the objections.
 {¶ 7} Beard has appealed the trial court's decision raising one assignment of error for our review. Her sole assignment of error states:
 {¶ 8} "The trial court erred to the prejudice of plaintiff-appellant by allowing defendant-appellee to present hearsay testimony regarding learned treatises."
 {¶ 9} The admission or exclusion of evidence is within the broad discretion of the trial court. State v. Allen (1995), 73 Ohio St.3d 626,633. The trial court's ruling will not be reversed on appeal absent a clear abuse of discretion that materially prejudices the defendant. Statev. Kniep (1993), 87 Ohio App.3d 681, 685, citing State v. Hymore (1967),9 Ohio St.2d 122, 128. The term "an abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore,5 Ohio St.3d 217, 219.
 {¶ 10} In the present case, Dr. Nicholson testified that Mr. Moss had a long history of low white blood cell counts and had what is called benign familial neutropenia. According to Dr. Nicholson, patients with this condition have no increased risk of infection and no increased risk of surgery; they just tend to run a low blood count. With respect to the standard of care for safely operating on a patient with benign familial neutropenia, Dr. Nicholson testified as follows:
"Q. Now, what is the standard of care of a surgeon like yourselfregarding what you need in terms of a white blood cell count to safelytake a patient with benign familial neutropenia to surgery?
Patients who have benign familial neutropenia, if they have a completecount meaning neutrophils, basophils, eosinophils and lymphocytes greaterthan one thousand, one thousand and above. And, this is something that'sdocumented in the medical and surgical literature.
MR. ROBENALT: Objection, Your Honor. Move to strike.
THE COURT: Overruled."
 {¶ 11} Dr. Nicholson also testified that he met the standard of care in taking Mr. Moss to surgery with a white blood cell count of 2,300. Dr. Nicholson testified:
"Q. Doctor, I'll ask my question again. Do you have an opinion as to areasonable degree of medical probability that you met the acceptedstandard of care in taking Mr. Moss to surgery with a white blood cellcount of 2,300 and no differential, on December 12th 2000?
Yes.
What is that opinion?
That opinion is that I met the standard of care to take Mr. Mossto surgery.
What is the basis of that opinion, Doctor?
That opinion is based on the fact that the medical and surgicalliterature states that patients who have benign familial neutropenia canbe operated on safely with white blood cell counts greater than athousand.
* * *
MR. NOVAK: We would ask that the response to the question be stricken onthe basis that his answer was that based upon the literature that he'sread. Well, I can't, how can I cross-examine him when I don't know whathe's read. And, it's a clear hearsay response. It's got to go out.
THE COURT: Overruled. Ask him what he read.
* * *
Doctor, you made reference to the literature in your response. Whatliterature are you referring to?
There are various review articles in the medical as well as surgicalliterature that deals with the benign, the condition of benign familialneutropenia.
Is your opinion based also on your education and your training andyour experience over the years?
Yes, it is."
 {¶ 12} The above testimony reflects that Dr. Nicholson twice referenced medical literature as supporting his opinion. Beard claims that the trial court erred by allowing this testimony over counsel's objections.
 {¶ 13} The Ohio Rules of Evidence has no learned treatise exception to the hearsay rule. Evid.R. 803. Thus, medical books or treatises are not admissible as evidence to prove the truth of the statements contained therein.[2] Moreover, a learned treatise may not be admitted into evidence and a witness may not quote language from the treatise or make reference to its title during direct examination. Evid.R. 702 and 706; see, also, Piotrowski v. Corey Hosp. (1961),172 Ohio St. 61, syllabus.
 {¶ 14} In addition to the hearsay problem, learned treatises are not admissible because the opinions or conclusions contained therein are unverifiable, the technical language may not be understood by most jurors, the opinions or conclusions would be admitted into evidence without an oath of truthfulness, and the opposing party would be unable to cross-examine the person who gave the opinion or conclusion. State v.Malroit (Nov. 8, 2000), Medina App. No. 3034-M; see, also Piotrowski,172 Ohio St. at 69.
 {¶ 15} While learned treatises may not be admitted as evidence or relied on for the truth of the opinions stated therein, experts have been permitted to refer to literature generally as forming part of the basis for their opinion. See Gartner v. Hemmer, Hamilton App. No. C-010216,2002-Ohio-2040; Limle v. Laboratory Corp. of Am. (2000),137 Ohio App.3d 434, 438-439. We recognize that no one becomes an expert without research, education, training, and experience and that an expert is entitled to rely on this background in forming his opinion. However, there is a distinction between reference to literature as being part of the collective basis for an expert's opinion and reference to literature as substantive evidence.
 {¶ 16} In this case, Dr. Nicholson testified that the white blood cell count level to safely take a patient with benign familial neutropenia to surgery was greater than 1,000. He unequivocally stated that this is something that is documented in the medical and surgical literature. Dr. Nicholson also testified that the standard of care in taking Mr. Moss to surgery with a white blood cell count of 2,300 was met, based upon the fact that the medical and surgical literature states that patients who have benign familial neutropenia can be operated on safely with white blood cell counts greater than 1,000.
 {¶ 17} Dr. Nicholson's reference to the medical literature was used for the truth of the matter contained therein, not as a general basis for his opinion. Therefore, his testimony was hearsay and was used as substantive evidence. See Pool v. Wade (1996), 115 Ohio App.3d 449;Edwards v. Radecki (May 14, 1993), Lucas App. No. L-92-042. While Dr. Nicholson later stated his opinion was also based on his training, education, and experience, this does not change the fact that his earlier reference to the medical literature amounted to hearsay.
 {¶ 18} Moreover, Dr. Nicholson's testimony was not a generalized statement that incorporated medical literature with his education, training, and experience to form his opinion. Rather, Dr. Nicholson specifically stated the fact that it is safe to operate on patients with benign familial neutropenia with white blood cell counts greater than 1,000 is documented in medical literature. In essence, Dr. Nicholson was relying on a phantom expert to support his opinion. While Dr. Nicholson may also have believed that he met the standard of care based on his education, training, and experience, his specific reference to medical literature to establish the level at which the standard was met was an improper use of the literature as substantive evidence.
 {¶ 19} We find that the trial court erred in allowing Dr. Nicholson's testimony on this matter as it was inadmissible hearsay. Nevertheless, the erroneous admission of learned treatises into evidence does not justify reversal of an otherwise valid adjudication where substantial rights of the complaining party are not affected or the court's action is not inconsistent with substantial justice. O'Brien v.Angley (1980), 63 Ohio St.2d 159, 164. To determine whether substantial justice has been done, we must not only weigh the prejudicial effect of the error, but also, we must determine whether if the error had not occurred, the trier of fact would probably have made the same decision. Id. at 164-165; Hallworth v. Republic Steel (1950), 153 Ohio St. 349, at paragraph three of the syllabus.
 {¶ 20} We find that the error in this case was prejudicial and we cannot say that had the error not occurred, the trier of fact would probably have made the same decision. One of the central issues in this case was whether Dr. Nicholson met the standard of care by performing elective hernia surgery on Mr. Moss when his white blood cell count was 2,300. Beard presented expert testimony from Dr. Schlanger, who stated that the blood count was lower than the acceptable standard. Dr. Schlanger testified as follows:
"Q: Okay. Doctor, do you have an opinion as to what the standard of carein Ohio demands of a surgeon with respect to a preoperative evaluationfor a patient who has recently undergone chemotherapy?
A: I do have an opinion.
Q: And what is your opinion?
A: My opinion is that a patient that undergoes chemotherapy, that hasjust finished chemotherapy, needs to have the blood work looked atextremely carefully. And the fact that if the blood count is lower thanacceptable standard, which in this case at 2.3, the patient either shouldhave been sent back to the oncologist for possible either GSF orLithium, which would have raised their white blood cell count to a safelevel to proceed with surgery. I also would have looked at nutritionalparameters to make sure that if the patient has an operation they willheal. And neither of these things were done."
 {¶ 21} The trial court's admission of Dr. Nicholson's testimony regarding the medical literature, which was in direct contradiction to Dr. Schlanger's testimony, was clearly prejudicial to Beard. Dr. Nicholson was permitted to rely on the literature as substantive evidence to support his opinion that Mr. Moss's white blood cell count was at a safe level to perform surgery. Further, it cannot be said that but for the error in allowing this testimony, the trier of fact would probably have made the same decision. Accordingly, we find that the trial court's action was inconsistent with substantial justice.
 {¶ 22} Beard's assignment of error is sustained.
Appellant's request in her reply brief to add an additional assignment of error is denied.
 {¶ 23} Judgment reversed. Case remanded for a new trial.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
Kenneth A. Rocco, A.J., and Ann Dyke, J., Concur.
[1] Beard's amended complaint also named Meridia Huron Hospital and other physicians as defendants. Beard later dismissed all defendants except Dr. Nicholson.
[2] In Ohio, a learned treatise may be used for impeachment purposes to demonstrate that an expert witness is either unaware of the text or unfamiliar with its contents. Stinson v. England (1994), 69 Ohio St.3d 451, paragraph two of the syllabus. Moreover, the substance of the treatise may only be used to impeach the credibility of an expert witness who has relied upon the treatise or has acknowledged its authoritative nature. Id.