OPINION
These appeals, while not consolidated, were argued simultaneously and each will be addressed in this opinion.
 ASSIGNMENTS OF ERROR
The Assignments of Error of appellant, Clow Water Systems/McWayne, Inc. (Clow) in Case No. 01-CA-004 are:
 I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING APPELLANT CLOW'S MOTIONS FOR A DIRECTED VERDICT AND FOR JUDGMENT NOTWITHSTANDING THE VERDICT BECAUSE:
 A. THE EVIDENCE ON MEDICAL CAUSATION WAS LEGALLY INSUFFICIENT TO SUPPORT A VERDICT FOR APPELLEE WAYNE HART; AND
 B. APPELLEE WAYNE HART FAILED TO PRESENT LEGALLY SUFFICIENT EVIDENCE TO SUPPORT THE STATUTORY DEFINITION OF INJURY.
 II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ALLOWING APPELLEE WAYNE HART TO PRESENT INADMISSIBLE EVIDENCE TO THE JURY AS TO WHETHER HIS NORMAL JOB DUTIES WOULD HAVE AGGRAVATED HIS PRE-EXISTING DEGENERATIVE DISC DISEASE.
 III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ALLOWING APPELLEE WAYNE HART TO IMPROPERLY USE LEARNED TREATISES ON CROSS-EXAMINATION IN AN ATTEMPT TO IMPEACH THEIR TESTIMONY THUS LETTING THE JURY HEAR CERTAIN TESTIMONY OF APPELLANT CLOW'S DOCTORS.
 IV. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ORDERING APPELLANT CLOW TO PAY COSTS OF DEPOSITIONS, COURT REPORTER SERVICES, AND COPYING COSTS IN CASE NO. 99-CI-124 AS IT IS NOT SUPPORTED BY APPLICABLE LEGAL AUTHORITY.
The Assignments of Error of appellant, Wayne Hart in Case No. 01-CA-005 are:
 I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING APPELLANT HART'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND/OR MOTION FOR NEW TRIAL BECAUSE THE VERDICT FORM USED IN CASE NO. 99-CI-123 CONTAINED A MISTAKE AND WAS NOT APPLICABLE TO THE ISSUE RAISED BY THE EVIDENCE.
 II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING MR. HART THE RIGHT TO PARTICIPATE IN THE WORKERS' COMPENSATION FUND FOR THE ADDITIONAL REQUESTED CONDITION OF "L5-S1 RADICULOPATHY."
 III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY AWARDING MR. HART ONE-HALF OF THE $2,500.00 ATTORNEY FEES, DEPOSITION COSTS AND OTHER LITIGATION EXPENSES REQUIRED BY O.R.C. § 4123.512(D) AND (F).
The sole Assignment of Error of appellant, Administrator, Bureau of Worker's Compensation in Case No. 01-CA-006 is:
 I. THE TRIAL COURT ERRED WHEN IT ORDERED THAT THE PLAINTIFF SHALL RECOVER FROM THE WORKERS' COMPENSATION FUND THE SUM OF $1,250.00 FOR ATTORNEY FEES.
 STATEMENT OF FACTS
On June 20, 1994, Wayne Hart (Hart) suffered an injury during employment with Clow Water Systems, Inc. (Clow). This workers compensation claim was allowed for "sprain/strain lumbosacral; neuritis lumbosacral".
Claimant subsequently filed a claim of injury of March 23, 1998, while with the same employer. This claim was not recognized as a new injury.
Mr. Hart filed two separate appeals with the Coshocton County Court of Common Pleas.
Case No. 99-CI-123 requested participation in benefits for an aggravation of degenerative disc disease at L3-4 and L5-S1 and L-5-S1 radiculopathy from the March 23, 1998 claim.
Case No. 99-CI-124 was filed seeking the same medical determination arising out of the June 20, 1994 claim.
The Commission had denied claimant's request to have the allowed 1994 claim expanded to recognize aggravation of degenerative disc disease at L3-4, L5-S1 and L5-S1 radiculopathy. It was also determined at such administrative level that no new injury occurred on March 23, 1998. The Commission also stated that it could not determine in this case whether radiculopathy was a symptom or diagnosis.
Based upon an allowed Motion for Partial Summary Judgment of Clow that radiculopathy was not a condition but a symptom, Hart was prevented from the presentation of medical testimony, if available, to controvert this determination.
Both cases were consolidated for trial.
The jury granted Hart the right of participation in Case No. 99-CI-124 but denied such in Case No. 99-CI-123.
The verdict memorialized on its journal by the trial court was:
***
 . . . in Case No. 99-CI-123, Mr. Hart was not entitled to participate for the condition of "degenerative disc disease at L3-4 and L5-S1 arising from an incident on March 13, 1998, in Claim No. 98-539052"; and that in Case No. 99-CI-124, Mr. Hart was entitled to participate for the condition described as "aggravation of degenerative disc disease at L3-4 and L5-S1 arising from an incident on June 20th or 21st, 1994, in Claim No. L261239-22."
Hart filed Motions for Judgment Notwithstanding the Verdict and for a New Trial in Case No. 99-CI-123 as an error was said to have occurred in the jury verdict form as to such case.
Clow also filed similar motions asserting insufficient evidence.
Hart also filed a supplemental Motion for Judgment Notwithstanding the Verdict.
Such motions were denied.
A motion for taxation of costs was then filed with objections in response.
 I. (Case No. 01-CA-004)
Certain aspects of Clow's First Assignment of Error together with the Second and Third Assignments of Error involve abuse of discretion.
In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
Clow's First Assignment of Error addressing the trial court's denial of motions for directed verdict and judgment notwithstanding the verdict is predicated upon assertions of insufficient evidence as to medical causation and occurrence of a compensable injury.
The standards of review applicable to each motion are identical.Nickell v. Gonzalez (1985), 17 Ohio St.3d 136, Ayers v. Woodard (1957),166 Ohio St. 138.
Under Civ. R. 50, the trial court, when considering such motions, shall construe the evidence most strongly in favor of the party against whom each motion is directed and decide as to any determinative issue whether reasonable minds could come to but one conclusion. Mantua ManufacturingCompany v. Commerce Exchange Bank (1996), 75 Ohio St.3d 1, Sanek v.Duracote Corp. (1989), 43 Ohio St.3d 169.
Appellant, in support of Subsection A of the First Assignment of Error, argues that Hart's medical expert, Dr. Arndt, failed, as required, to base his opinions on reasonable medical certainty or probability as to the causal relationship of the 1994 injury and aggravation of pre-existing degenerative disc disease.
The fact that the testimony of Clow's experts are in disagreement with Hart's expert, Dr. Arndt, is not of consequence in our review of the Assignment of Error by Clow as to the sufficiency of the medical testimony to support the verdict.
Clow relies on the following testimony of Dr. Arndt:
***
 "I don't typically feel that the extensive degenerative disk [SIC] diseases that he shown [SIC] at the end is necessarily a natural aging process but the aging process is a factor, a definite fact in the degeneration, yes, sir."
(TR-111):
 "A. I feel it would be a combination of the injury that sustained in 1976 coupled with other degenerative changes that were there and progressing.
 Q. Okay. So I want to make sure I understand. It got worse because of the 1976 injury at Peabody Mine?
A. Partly because of that.
 Q. And partly because of the natural deterioration of the spine?
 A. Because there is some natural — but when a person has an injury, there is going to be more progressing degenerative changes, in my opinion.
 Q. Okay. So once you have had an injury and you start the degeneration, then it does progress — I mean, natural things start to happen?
 A. It does progress. Different rates for different people."
Hart's counsel responds with the following testimony by the same witness:
***
 Q. Would you say that Mr. Hart in March of `98, March 9th `98 had degenerative disc disease in at least the levels 3-4, L5-S1?
A. Yes, he did. (TR. 73)
 Q. What I'm going to do, Doctor, is approach it by asking you for some opinions. If I ask you for your opinions, would you please base those opinions on reasonable chiropractic certainty? Can you do that?
A. Yes, sir.
 Q. And at the same time, do your best to give me those opinions on reasonable chiropractic probability. Would you do that for me?
A. Yes, sir. (TR. 74-75)
***
 Q. Do you have an opinion as to whether or not the previous claim that was allowed on July 20th of `94, I think your records, show July 21st, of `94?
A. I think it's probably —
Q. * * * Or, excuse me, June. I Apologize.
A. Okay.
 Q. Do you have an opinion as to whether or not the June — I will use that as the 20th date because that's what the bureau shows. Do you have an opinion as to whether or not that June 20th, 1994 claim and injury and whether or not the `98 injury was an aggravation of that previous `94 claim?
A. I believe it was —
MR. PALEUDIS: — Objection.
 THE COURT: The objection is overruled. The answer may stand.
BY MR. TSANGEOS:
Q. I'm sorry. Your answer?
 A. I believe it was an aggravation of the previous existing claim of lumbosacral sprain/strain.
In addition Hart's Exhibit 9 states in part:
 Please see enclosed MRI report of lumbar spine on Wayne Hart dated 5/7/98. Please note that there is degenerative disc disease and spinal stenosis at the level of L3-4 and L5-S1.
 These conditions of degenerative disc disease at L3-4 and L5-S1 as well as spinal stenosis pre-existed the injury of 6/20/94, and it would be my opinion that these conditions were both substantially aggravated by the injury of 6/20/94.
The trial court sustained Clow's objection and it's motion to strike language by Dr. Arndt as to:
***
 "The injury of 6/20/94 certainly could have also aggravated the pre-existing degenerative changes as well as the `98 injury." (TR-165)
We must disagree with Subsection A of Clow's First Assignment of Error and find that sufficient testimony supported Hart meeting the requirements of reasonable chiropractic probability, particularly because he was instructed to provide opinions based on reasonable certainty or probability and that no abuse of discretion occurred as to admission of Dr. Arndt's opinions.
Subsection B of Clow's First assignment of Error directs attention to the legal definition of compensable "injury".
Revised Code § 4123.01(C) provides, in pertinent part:
 "Injury" includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment. "Injury" does not include:
 (1) Psychiatric conditions except where the conditions have arisen from an injury or occupational disease;
 (2) Injury or disability caused primarily by the natural deterioration of tissue, an organ, or part of the body;
 (3) Injury or disability incurred in voluntary participation in an employer-sponsored recreation or fitness activity if the employee signs a waiver of his right to compensation or benefits under this chapter prior to engaging in the recreation or fitness activity.
Interpreting this statute, the Ohio Supreme Court has noted that, in order to participate in the Workers' Compensation Fund, an employee must demonstrate a "causal connection" between his/her employment and the injury. Waller v. Mayfield (1988), 37 Ohio St.3d 118, 122. Specifically, an employee must show the existence of such a "causal connection" between injury and employment either through the activities, conditions or the environment of said employment. Id. (quoting Bralley v. Daugherty (1980), 61 Ohio St.2d 302, 303).
The Ohio Supreme Court in Schell v. Globe Trucking, Inc. (1990),48 Ohio St.3d 1, has stated:
 "Injury," for workers' compensation purposes, includes aggravation of preexisting condition. R.C. § 4123.01(C).
 Workers' compensation claimant who has proven work-related aggravation of preexisting condition is not required to prove that aggravation is substantial in order to be entitled to determination of the extent of his participation in the State Insurance Fund; work-related aggravation of preexisting condition does not have to be of any particular magnitude in order to entitle claimant to determination of benefits under the fund. R.C. § 4123.01(C).
We therefore also disagree with appellant, Clow, as to Subsection B of its First Assignment of Error and determine that sufficient evidence was presented for the jury to find an aggravation of the allowed injury of 1994.
Therefore, the First Assignment of Error of Clow is rejected in its entirety.
 II. (Case No. 01-CA-004)
As to Clow's Second Assignment of Error as to evidence of Hart's job duties, we have already provided the standard for abuse of discretion.
Claimant Hart has adequately responded by referencing Village v.General Motors Corp. (1984), 15 Ohio St.3d 129 and this court's opinion in Gomez v. Case Farms of Ohio, Inc. (1997), 97-LW-2183 (Ohio App. 5th Dist.) which distinguished Brody v. Mihm (1995), 72 Ohio St.3d 81.
We therefore disagree with Clow's Second Assignment of Error.
 III. (Case No. 01-CA-004)
Clow's Third Assignment of Error raises the issue of the utilization of learned treatises.
Evidence Rule 706 states:
 Statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art are admissible for impeachment if the publication is either of the following:
 (A) Relied upon by an expert witness in reaching an opinion;
 (B) Established as reliable authority (1) by the testimony or admission of the witness, (2) by other expert testimony, or (3) by judicial notice.
 If admitted for impeachment, the statements may be read into evidence but shall not be received as exhibits.
The cross examination reviewed by appellant Clow does not correspond with utilization of learned treatises covered by Evid. R. 706 with the possible exception of questions relating to the textbook of Levy and Wegman. However, Dr. Martin agreed with such authors in the only question which explored to any extent the authors opinions as to disc degeneration as quoted in such appellant's brief, to wit:
***
 Q. Do you recall whether or not the authors of the book that you have talk [SIC] about how disk [SIC] degeneration may predispose somebody to clinical changes such as spinal instability, spinal stenosis.
A. I mean, I know that.
As to the cross examination of Dr. Kepple, none of the questions quoted developed any specific content of any author's work as counsel for Hart ceased exploration of the Doctor's opinions upon response that he knew articles had been published but that he was either not a subscriber to such or was unfamiliar with the content thereof.
The questions asked did not reach the threshold of use of learned treatises covered by such Evid. R. 706.
However, under appropriate circumstances such treatises can be used in impeachment. Freshwater v. Scheidt (1999), 86 Ohio St.3d 260.
Further, we agree with the court in State v. DePew (1999),136 Ohio App.3d 129, as quoted in Hart's brief:
 "trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant."
This Third Assignment of Error of Clow is not well taken and is rejected.
 IV. (Case No. 01-CA-004)
We shall address Clow's Fourth Assignment of Error subsequently in this opinion as it relates to Hart's Third Assignment of Error and the sole Assignment of Error of appellant, administrator of Worker's Compensation and involve the same subject and will be reviewed simultaneously.
 I. (Case No. 01-CA-005)
The First Assignment of Error of Hart asserts an error in the jury verdict form in Case No. 99-CI-123 of which counsel became aware subsequent to the jury's decision. No objections were raised for the trial court's consideration.
An appellate court need not consider an error which a party complaining of the trial court's judgment could have called but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. State v. Williams (1977),51 Ohio St.2d 112, syllabus paragraph one. Stores Realty Co. v. City ofCleveland (1975), 41 Ohio St.2d 41 . See also: Atwood v. Leigh (1994),98 Ohio App.3d 293. Greynolds v. Kurman (1993), 91 Ohio App.3d 389, 395.Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207.
We therefore find that appellant Hart has waived the claimed error and reject this First Assignment of Error.
 II. (Case No. 01-CA-005)
The Second Assignment of Error questions the trial court's summary judgment ruling which prevented submission to the jury of evidence related to radiculopathy.
The trial court relied upon State ex rel. Foor v. RockwellInternational (1997), 78 Ohio St.3d 396, in concluding that such case determined that radiculopathy was a symptom rather than a condition.
At the appellate court level, radiculopathy was defined by Judge Smart from the Dorlance Medical Dictionary in her dissent in Foor v. RockwellIntern (August 10, 1993), Licking App. No. 92CA109, unreported as:
 Dorlance Medical Dictionary defines myositis as an inflammation of a voluntary muscle. That dictionary defines radiculopathy as a disease of the nerve roots. Bilateral is having two sides, or pertaining to both sides.
Such case did not draw such conclusion, either by this court or by the Supreme Court.
The classification of medical diagnosis is not within the realm of a court of law, unless statutory definitions are involved, except that the trier of fact may accept or reject the opinions of experts in determining which opinion is worthy of credence.
At the Fifth District level, this court was determining whether the Licking County Court of Common Pleas had correctly ruled on a summary judgment motion. In examining the basis for such motion this court affirmed as no controverting medical support was provided indicating that radiculopathy was other than a symptom and therefore an unappealable extent of disability question. Had medical data been supplied to such court to the effect that such was a condition, a material fact in dispute would have presented a bar to summary judgment.
Likewise, the Supreme Court in Foor, supra, did not make a determinative medical diagnosis. It ruled that proof of a causal relationship between the injury and the claimant's bilateral radiculopathy was lacking and therefore temporary total compensation was denied.
In paragraph five of the syllabus, the court referenced radiculopathy as a symptom/condition rather than determining the former.
Also, in Foor, at the Supreme Court level, supra, the claimant had filed a mandamus action with the Franklin County Court of Appeals in which, based on his concept of this court's prior ruling, he reversed his position by stating that, because radiculopathy was a symptom, not a condition, he was entitled to temporary total disability benefits. Such appellate court stated that regardless of whether it was a condition or symptom, it was unrelated to the injury according to the medical opinion before the Commission, which therefore did not abuse its discretion.
Therefore, we agree with Hart's Second Assignment of Error that the determination as to whether radiculopathy was a symptom or condition was a disputed material fact for consideration by the jury based on acceptance or rejection of the opposing medical testimony and that Foor,
upon which the trial court based its ruling, was incorrectly applied as controlling.
 IV. (Case No. 01-CA-004) III. Case No. (01-CA-005) I. Case No. (01-CA-006)
As stated previously, the relationship raised by Clow's Fourth Assignment, Hart's Third Assignment and the Administrator's Assignment of Error relate to the trial court's determination of attorney fees and costs and the responsibility of payment thereof.
In the case sub judice, two appeals were filed with such being consolidated for trial
The Attorney General on behalf of the Administrator filed its proforma answer in each to protect the administrative decisions as required by its representative obligation but did not proceed further to participate at trial. The employer, Clow, a self insured employer in actuality, contested each appeal.
The trial court issued the following order as to the fees and costs:
 Pursuant to the motion, the court orders that plaintiff Wayne Hart shall recover from the Workers' Compensation Fund the sum of $1,250 for attorney fees. In this matter two cases were consolidated for joint trial, namely 99-CI-123 and 99-CI-124. Jury trial in both cases was held on a consolidated basis.
 Claimant prevailed on one claim and lost on the other claim. The court therefore apportions the attorney fees allowable to each case in equal shares and awards such fees accordingly.
 With regard to deposition costs, the costs of the stenographic depositions filed with the court, and copies of those depositions for each party shall be charged against the "unsuccessful party" pursuant to R.C. 4123.512. In this instance both Clow and the claimant are unsuccessful parties and this court holds that the appropriate deposition costs shall be paid from the fund and then charged back one-half to the unsuccessful party, i.e. Clow, in Case No, 99-CI-124. Clow was fifty percent unsuccessful. To the extent that plaintiff has advanced these costs beyond his fifty percent share, he should be reimbursed.
 The costs of deposition and court reporter services and copying costs set forth in plaintiff's motion, totaling [SIC] $2,582.63, are found to be necessary and vital expenditures of the litigation of these two combined cases and these costs are found to be reasonable.
As to the payment of attorney fees, R.C. § 4123.512(F) provides:
 (F) The cost of any legal proceedings authorized by this section, including an attorney's fee to the claimant's attorney to be fixed by the trial judge, based upon the effort expended, in the event the claimant's right to participate or to continue to participate in the fund is established upon the final determination of an appeal, shall be taxed against the employer or the commission if the commission or the administrator rather than the employer contested the right of the claimant to participate in the fund. The attorney's fee shall not exceed twenty-five hundred dollars.
While the Attorney General on behalf of the Administrator cites Alfordv. Republic Steel Corp. (1983), 12 Ohio App.3d 145, Sorci v. GeneralMotors Corp. (1983), 13 Ohio App.3d 223 and Ginnis v. Atlas Painting andSheeting Company (1992), 63 Ohio St.3d 754, such reliance is misplaced.
In Alford, we have no knowledge from reading the opinion as to whether the Administrator filed an answer.
The Administrator states in its brief that it assumes such. In utilizing Alford on the issue as to whether the filing of an answer is sufficient to warrant "contesting" the claim under the statute, when the Employer defends at trial as Clow did here, we cannot presume.
The claimant in Sorci was found eligible to participate at each administrative stage, so therefore the Administrator did not contest the claimant's participation.
The Administrator rather than the Employer was the contesting party inGinnis v. Atlas Painting and Sheeting Company.
In this case, even though required Answers were filed on behalf of the Administrator, we determine that such action did fall within the context of contesting the respective claims under the language of R.C. §4123.512 as the Administrator did not participate at trial. The position of the Administrator as not in actuality being the contesting party is acknowledged by Clow in its opposition to the Motion of the Administrator as noted on page 5 of the Administrator's brief as follows:
 The Defendant-Administrator, Bureau of Workers' Compensation, has had absolutely no involvement in this case except the filing of its initial Answers. The Defendant-Administrator has not attended any case management conferences, pre-trial hearings, or objection hearings. The Administrator has not attended any depositions or participated in discovery. Furthermore, the Administrator has taken a "hands-off" approach to this case and showed little interest to the litigants or this Court.
Therefore, it is clear that we must agree with the Assignment of Error propounded by the Appellant, Administrator of the Bureau of Worker's Compensation, and determine that the mere filing of Answers did not, in the case sub judice constitute contesting the claims under the statute since the self insured employer (Clow) carried the defensive position through trial as to each case.
The Worker's Compensation Fund in this case is not responsible for the payment of attorney fees as determined by the court under R.C. §4123.512(F).
With the obligor as to attorney fees determined as being the employer (Clow) rather than the State Fund in Case No. 99-CI-124, we must now address the method of determination of the amount and payment of other costs of litigation.
As to the attorney fees, the trial court, according to its Entry set forth on pages 16 and 17 heretofore, divided the same equally between the two consolidated appeals, awarding $1,250.00 to claimant's counsel.
We find this rationale to be incorrect.
Revised Code § 4123.512(F) provides for a payment of such fees to be fixed by the Judge, to a maximum of $2,500.00.
The trial court in the case sub judice must therefore determine the amount of fees necessary for the claimant to establish the case in which he was successful.
The trial court may determine that the entire allowable fee of $2,500.00 was necessary in such regard or that only a portion, such as the $1,250.00 was appropriate but abuses its discretion in dividing the maximum authorized fee equally between the two cases without reviewing the fees from a "reasonably necessary" standard. This can result in penalizing the claimant due to consolidation if the maximum fee of $2,500.00 or a fee greater than the $1,250.00 awarded would still be appropriate.
The methodology of the trial court, while understood, violates the intention of the Legislative Enactment of R.C. § 4123.512(F).
We therefore agree with appellant, Hart in this regard.
The application for payment of costs submitted to the trial court by appellant Hart was detailed as follows:
 1) Pre-trial conference with $200.00 Plaintiff's expert, Gerald N. Arndt, DC
 2) Court testimony of Plaintiff's $800.00 expert, Gerald N. Arndt, DC
 3) Transcript of Defendant's $197.75 expert, John W. Cunningham, MD
 4) Transcript of Defendant's $267.90 expert, Richard N. Kepple, MD
 5) Transcript of Defendant's $247.90 expert, Paul Martin, MD
 6) Transcript of deposition $167.20 of Wayne Hart
 7) Transcript of deposition of $157.50 Defendant's representative, James S. Baker
 8) Attendance fee for deposition $ 80.00 of Defendant's representative, James S. Baker
 9) Reproduction and photo $464.38 copying expenses
TOTAL COSTS $2,582.63
We agree that the listed expenses were authorized under R.C. 4123.512(D) and (F). Pritchard v. Administrator of Bureau of Workers Compensation
(1998), 5th Dist. Court of Appeals, 97APD080053.
While the procedure of the trial court was logical and within its discretion with respect to payment of deposition and other costs we must respectfully question the trial court's approach as to division between the parties.
In Akers v. Serv-A-Portion, Inc. (1987), 31 Ohio St.3d 78 the Supreme Court reviewed R.C. § 4123.519 (now R.C. § 4123.512) and found that such costs are mandatorily chargeable in all cases in the first instance to the surplus fund but found that the reimbursement language:
 "and costs thereof charged against the unsuccessful party if the claimant's right to participate . . . is finally sustained or established"
is conditional in that reimbursement is not applicable unless the claimant is successful. In that event, such costs are chargeable to the self-insured employer or the administrator, as the case may require.
Therefore, that portion of the trial court's order directing chargeability after payment from the surplus fund is erroneous.
In addition, the same problem occurs as we discussed as to attorney fees.
By consolidation, judicial economy undoubtedly occurred. However, the determination remains as to whether the claimants deposition, experts and other costs were necessary in whole or in part to establish the facts in Case No. 99-CI-124 and, if so, such would then be subject to reimbursement by Clow to the surplus fund.
If any such costs were unrelated to the successful prosecution of such case, then under Akers, the burden would be borne by the surplus fund without charge-back to Clow.
We therefore reject Clow's Fourth Assignment of Error as to the obligation to pay those listed costs applicable to Case No. 99-CI-124, sustain in part appellant Hart's Third Assignment of Error as expressed heretofore as to the methodology of determination and division of attorney fees and costs and approve appellant Administrator's sole Assignment of Error.
As to Appellate Case No. 01-CA-004 in which Clow is the appellant, we affirm as to Assignment of Errors' numbers One, Two and Three and discuss our ruling as to the Fourth Assignment under Case No. 01-CA-006.
In regard to Case No. 01-CA-005 we affirm the trial court as to the First Assignment of Error. However, as to the Second Assignment of Error, we reverse the Summary Judgment decision and order a new trial as to Common Pleas Case No. 99-CI-123 with the factual question of radiculopathy as to being a condition or symptom to be submitted to the trier of fact if sufficient medical/chiropractic testimony is admitted.
We address Hart's Third Assignment of Error under our ruling in 01-CA-006.
As to 01-CA-006 which is the Administrator's appeal, we here review the sole Assignment of Error therein along with appellant Clow's Fourth Assignment of Error in Case No. 01-CA-004 and appellant Hart's Third Assignment of Error.
We reverse the trial court's Order as to the method of determination of the attorney fees applicable to Common Pleas Case No. 99-CI-124 and as to the obligor of the necessary fees applicable to such case and order that a hearing be held to determine such appropriate fees rather than the one-half division which was ordered.
We agree with the trial court's determination that the deposition and other costs listed on page 20 hereof are appropriate costs to be paid but reverse as to the method of division and as to the ultimate obligation of reimbursement and order that a hearing be held and an order made in conformity herewith.
JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Common Pleas Court, Coshocton County, Ohio in Case No. 01-CA-004 is affirmed in part and reversed and remanded in part, Case No. 01-CA-005 is affirmed in part and reversed and remanded in part, Case No. 01-CA-006 is reversed and remanded. Costs to appellant Clow Waste Systems/McWayne, Inc.
Hon. John W. Wise, J. Hon. John F. Boggins, J. concur. Hon. Julie A. Edwards, P.J. dissents in part.