DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant Joshua Q. Depew appeals the judgment of the Ross County Court of Common Pleas, which convicted him of involuntary manslaughter, a first-degree felony in violation of R.C. 2903.04. Appellant contends that the trial court committed three specific errors that require reversal of his conviction: 1) the trial court's failure to instruct the jury on the elements of self-defense; 2) the trial court's instruction to the jury that they disregard all testimony concerning the victim's reputation for, and specific acts of, violence; and, 3) the trial court's denial of appellant's motion for a continuance.
 {¶ 2} For the reasons that follow, we find appellant's assignments of error to be without merit and affirm the judgment of the trial court.
 Statement of the Facts and Procedural Posture I. The Events Surrounding the Victim's Death {¶ 3} The victim in this case, Jay Compher, engaged in more than one physical fight during the twenty-four hours preceding his death on June 14, 1998. In fact, witnesses had observed Compher's lip, knuckles, and eye to be cut, swollen, and blackened. He had also been observed holding his head and had complained to his friends that his ribs hurt from a recent fight.
 {¶ 4} On the afternoon and evening of Compher's death, Defendant-Appellant Joshua Q. DePew was attending a backyard cookout hosted by his family members. Throughout the afternoon, Compher taunted DePew and his family from behind the fence of a neighbor's yard, screaming obscenities at Depew and his family.
 {¶ 5} In response, DePew walked over to the fence and, at Compher's urging, entered the neighbor's yard where Compher was located. Upon Depew's entering the neighbor's yard, Compher threw down his beer and turned to face Depew. DePew punched Compher in the jaw. Compher fell onto his back, and then raised himself up onto his elbows. DePew punched Compher again, rendering him unconscious. Compher never regained consciousness and died shortly thereafter.
 II. The First Trial and Appeal {¶ 6} DePew was charged with, and pled not guilty to, involuntary manslaughter, a first degree felony. At trial, the state presented the testimony of three medical expert witnesses who testified that Compher's death had been caused by a blow to the head. The state's medical experts further opined that Compher died within minutes of receiving the blow to the head.
 {¶ 7} The trial court did not permit appellant to use certain learned medical writings and texts to impeach the medical expert testimony presented by the state. The jury found Depew guilty of involuntary manslaughter, and Depew timely appealed his conviction.
 {¶ 8} On appeal, appellant argued that the trial court committed prejudicial error by not permitting Depew to utilize these learned medical writings and texts to impeach the testimony of the state's medical experts. We agreed with appellant, reversed his conviction, and remanded the case for a new trial. See State v. Depew (1999), 136 Ohio App.3d 129,736 N.E.2d 43.
 III. Proceedings on Remand {¶ 9} Upon remand, the trial court scheduled the new trial to commence on May 1, 2000.
 {¶ 10} On April 4, 2000, appellant filed a notice of substitution of counsel, substituting his current retained counsel for the public defenders who had previously represented him in this matter. Subsequently, appellant filed a motion seeking a continuance of the May 1, 2000 trial date. Evidently, one week before the scheduled trial date, the trial court orally informed both parties that appellant's motion for continuance was denied, and a journal entry reflecting the trial court's denial of the continuance was subsequently filed.
 {¶ 11} A jury trial was held on May 1, 2000, as scheduled. The testimony of lay witnesses remained essentially the same as that presented in the first trial, including numerous accounts of altercations initiated by the victim with other individuals within the twenty-four hours preceding the victim's death. In addition to the testimony of lay witnesses, the state once again presented the testimony of its three medical experts — Dr. Allen Yates, Dr. John Gabis, and Dr. Byron Smith — who testified that Compher died from a hemorrhage in the base of his brain within minutes of receiving the blow to the head by appellant.
 {¶ 12} After the conclusion of the presentation of evidence, the trial court instructed the jury as to its duties. Appellant objected to the trial court's refusal to instruct the jury on the affirmative defense of self-defense. The trial court specifically charged the jury with the following instruction, to which appellant also objected.
 {¶ 13} "Ladies and gentleman, the court has determined as a matter of law that self defense is not an issue in this case. You are therefore instructed that you will disregard any testimony that you have heard about the victim's reputation for violence as well as any specific acts of violence by the victim which have been testified to except that the fight the night before the victim's death may be considered by you as it may bear upon the issue of the cause of the victim's death."
 {¶ 14} The jury returned its verdict, finding appellant guilty of involuntary manslaughter, a first-degree felony in violation of R.C.2903.04. The trial court then proceeded to schedule a sentencing hearing in the matter.
 {¶ 15} Prior to the sentencing hearing, appellant filed a motion for a new trial with the trial court pursuant to Crim.R. 33. On June 5, 2000, the trial court denied appellant's motion for a new trial and held appellant's sentencing hearing. The trial court sentenced appellant to five years incarceration to be followed by five years of post-release control.
 The Appeal {¶ 16} Appellant timely filed a notice of appeal and presents the following assignments of error for our review.
 {¶ 17} First Assignment of Error: "The trial court erred to the prejudice of the defendant-appellant by refusing to instruct the jury upon the affirmative defense of self-defense (less than deadly force).
 {¶ 18} Second Assignment of Error: "The trial court erred to the prejudice of the defendant in instructing the jury to disregard, without restriction, all testimony concerning: 1)the victim's reputation for violence; 2)specific acts of violence on the part of the victim.
 {¶ 19} Third Assignment of Error: "The trial court erred to the prejudice of the defendant in denying defense counsel's motion to continue the May 1st, 2000 trial date."
 I. The Self-Defense Jury Instruction {¶ 20} In his First Assignment of Error, appellant argues that the trial court's decision to not charge the jury with instructions on the affirmative defense of self-defense constitutes reversible error. Specifically, appellant contends that he presented sufficient evidence to support a jury instruction on the issue of self-defense.
 A. Preservation of the Issue for Appeal {¶ 21} Initially we note that appellant never filed a written request for an instruction on self-defense as required by Crim.R. 30(A). Ordinarily, failure to comply with Crim.R. 30(A) constitutes a waiver of any error for failing to give the proposed instructions. State v.Thompson (Nov. 9, 1993), Ross App. No. 92CA1906, citing State v. Cook
(1992), 65 Ohio St.3d 516, 605 N.E.2d 70.
 {¶ 22} Nevertheless, in State v. Williford (1990),49 Ohio St.3d 247, 551 N.E.2d 1279, the Supreme Court of Ohio held that "where the trial court fails to give a complete or correct jury instruction on the elements of the offense charged and the defenses thereto which are raised by the evidence, the error is preserved for appeal when the defendant objects in accordance with the second paragraph of Crim.R. 30(A), whether or not there has been a proffer of written jury instructions in accordance with the first paragraph of Crim.R. 30(A)."State v. Williford, 49 Ohio St.3d 247, 252, 551 N.E.2d 1279.
 {¶ 23} Thus, although appellant failed to file a written request for the jury instruction on self-defense, appellant's objections to the trial court prior to the jury's retirement for deliberations preserved this issue for appeal. See Williford, supra; State v. Speakman, Pickaway App. No. 00CA35, 2001-Ohio-2437.
 B. Standard of Review {¶ 24} "A criminal defendant has the right to expect that the trial court will give complete jury instructions on all issues raised by the evidence." State v. Cousins (Aug. 14, 1991), Ross App. No. 1735, citing Williford, supra; State v. Guster (1981), 66 Ohio St.2d 266,421 N.E.2d 157. Also, a jury instruction requested by a party should be given if it is a correct statement of the law and is applicable to the facts of that particular case. See Murphy v. Carrollton Mfg. Co. (1991),61 Ohio St.3d 585, 575 N.E.2d 828; see, also, Cincinnati v. Epperson
(1969), 20 Ohio St.2d 59, 253 N.E.2d 785, paragraph one of the syllabus. "While a trial court has some discretion in the actual wording of an instruction, the issue of whether an instruction is required presents a question of law for de novo review." State v. Powell (Sept. 29, 1997), Ross App. No. 96CA2257, citing Murphy, supra; Epperson, supra; State v.Mitchell (1989), 60 Ohio App.3d 106, 574 N.E.2d 573.
 {¶ 25} "The standard for determining whether a criminal defendant has successfully raised an affirmative defense under R.C. 2901.05 is to inquire whether the defendant has introduced sufficient evidence which, if believed, would raise a question in the minds of reasonable people concerning the existence of that defense. State v. Melchior (1978),56 Ohio St.2d 15, 381 N.E.2d 195, paragraph one of the syllabus. R.C.2901.05(A) provides that the burden of going forward with the evidence of an affirmative defense, as well as the burden of proving the existence of that defense by a preponderance of the evidence, lie with the accused. [See, also, State v. Martin (1986), 21 Ohio St.3d 91, 488 N.E.2d 166, affirmed (1987), 480 U.S. 228, 107 S.Ct. 1098.] Thus, in addressing the assignment of error, we must first determine whether appellant met his burden of going forward with evidence of self-defense. The trial court, as matter of law, cannot give a jury instruction on an affirmative defense if the defendant fails to meet this initial burden. State v.Reedy (Dec. 11, 1996), Jackson App. No. 96CA782 ." State v. Powell
(Sept. 29, 1997), Ross App. No. 96CA2257; see, also, State v. Cousins
(Aug. 14, 1991), Ross App. No. 1735; State v. Getsy, 84 Ohio St.3d 180,198-199, 1998-Ohio-533, 702 N.E.2d 866; State v. Palmer, 80 Ohio St.3d 543,1997-Ohio-312, 687 N.E.2d 685; State v. Cross (1979), 58 Ohio St.2d 482,391 N.E.2d 319.
 C. The Elements of Self-Defense {¶ 26} Although Mr. Compher died almost immediately following appellant punching him, the trial court characterized appellant's punching the victim as less than deadly force and applied the elements of self-defense that correspond with non-deadly-force cases. Those elements do not include a duty to retreat. See Speakman, supra; State v. Perez
(1991), 72 Ohio App.3d 468, 594 N.E.2d 1041.
 {¶ 27} Although neither party directly argues that the trial court may have failed to consider the proper elements in its determination that appellant was not entitled to a jury instruction on self-defense, the state argues, in its brief before this Court, that appellant did fail to put forth evidence that no violate of a duty to retreat occurred, prior to utilizing the resulting deadly force. Appellant has not raised this issue for our review. Moreover, we find no error in the trial court's determination that this case involves self-defense with less than deadly force.[1]
 {¶ 28} Thus, in order to establish self-defense in the present case, appellant must show by a preponderance of the evidence that (1) he was not at fault in creating the situation; (2) he reasonably believed that some force was necessary to defend himself against the imminent use of unlawful force; and (3) the force used was not likely to cause death or great bodily harm. See State v. Perez, 72 Ohio App.3d 468,594 N.E.2d 1041; Columbus v. Dawson (1986), 33 Ohio App.3d 141,514 N.E.2d 908; In Re Maupin (Dec. 11, 1998), Hamilton App. No. C-980094; Speakman, supra; R.C. 2901.05(A). Furthermore, we note, "one may use such force as the circumstances require to protect oneself against such danger as one has good reason to apprehend." In Re Williams
(Mar. 21, 1995), Ross App. No. 94CA2025, citing Akron v. Dokes (1986),31 Ohio App.3d 24, 507 N.E.2d 1158; Columbus v. Dawson, 33 Ohio App.3d 141,514 N.E.2d 908; see, also, State v. Cousins (Aug. 14, 1991), Ross App. No. 1735.
 D. Creation of the Situation That Gave Rise to the Altercation {¶ 29} As we have just noted, it is well settled that "one cannot avail himself of a necessity which he has knowingly and willfully brought upon himself." State v. Morgan (1919), 100 Ohio St. 66, 72, 125 N.E. 109. "While one who first makes a malicious assault upon another continues in the conflict which ensues, he can not justify taking the life of his adversary, however necessary it may be to save his own, or to whatever extremity he may be reduced." State v. Reid (1965), 3 Ohio App.2d 215,220, 210 N.E.2d 142; see, also, Szalkai v. State (1917), 96 Ohio St. 36,117 N.E. 12. This element of a self-defense claim is often condensed into a determination of whether the defendant was the aggressor who instigated the physical confrontation with the victim.
 {¶ 30} In holding that appellant was not entitled to the jury instruction on self-defense, the trial court specifically found that appellant was at fault in creating the situation that gave rise to appellant punching the victim and causing his death. The trial court determined that the appellant, who was fully aware of the victim's violent tendencies, created the situation leading up to his punching of the victim by entering the neighbor's yard, after the victim urged him to do so, taunted him, and insulted him.
 {¶ 31} Based on our review of the record, we agree with the trial court's assessment of the situation. In all likelihood, had appellant never entered the neighbor's yard, even though urged to do so by the victim, this physical altercation would not have occurred. The record contains ample evidence that appellant entered the neighbor's yard at the victim's urging, with full knowledge of the victim's violent tendencies, and with the intention to engage in a physical confrontation with the victim.
 {¶ 32} Furthermore, the victim never entered, or attempted to enter, the yard where appellant was attending the family cookout. While it may have been very frustrating to have the victim continuously yelling obscenities and insults toward appellant and his family, verbal harassment can never constitute provocation entitling a defendant to defend himself or herself. See City of Bucyrus v. Fawley (1988),50 Ohio App.3d 25, 552 N.E.2d 676; State v. Napier (1995),105 Ohio App.3d 713, 664 N.E.2d 1330. Also, the record is devoid of any attempt by appellant to resolve this matter in any other fashion (e.g., calling the police).
 {¶ 33} This court has recently dealt with a case similar to the one presently at bar. In addressing the issue of self-defense we noted:
 {¶ 34} "[T]he first element of a self-defense claim does not require in all situations that the actor must have refrained from throwing the first punch. Rather, this element provides that the actor must not be at fault in creating the situation that gave rise to the affray. This concept is broader than simply not being the immediate aggressor. Again, a person may not provoke an assault or voluntarilyenter an encounter and then claim a right of self-defense." (Emphasis added.) State v. Nichols, Scioto App. No. 01CA2775, 2002-Ohio-415, citingKohner v. State (1927), 6 Ohio Law Abs. 201; State v. Vines (May 29, 1975), Cuyahoga App. No. 33871; State v. Gibbs (June 28, 1982), Lake App. No. 9-018; State v. Sanchez (Apr. 24, 1986), Cuyahoga App. No. 50566.
 {¶ 35} By entering his neighbor's yard, even at the victim's urging to do so, and choosing to confront the victim, appellant voluntarily entered into the encounter with the victim, who he knew to be a person prone to violence, especially when drinking, as is apparently the case here. Accordingly, appellant was precluded from asserting the affirmative defense of self-defense because he has not put forth evidence that he did not create the situation that gave rise to the affray. See id. "The trial court, as matter of law, cannot give a jury instruction on an affirmative defense if the defendant fails to meet this initial burden." Powell, supra.
 {¶ 36} Thus, the trial court did not err by refusing to give the jury the instruction of self-defense and we overrule appellant's First Assignment of Error.
 II. Instructing the Jury to Disregard Certain Testimony {¶ 37} In his Second Assignment of Error, appellant argues that the trial court erred by instructing the jury to disregard testimony concerning the victim's reputation for violence and specific instances of violent conduct by the victim. In light of our disposition of appellant's First Assignment of Error, and for the reasons that follow, we find appellant's arguments to be moot.
 A. Standard of Review {¶ 38} Initially, we note that a trial court is endowed with broad discretion in the admission or exclusion of evidence. See State v. Issa,93 Ohio St.3d 49, 64, 2001-Ohio-1290, 752 N.E.2d 904. Unless the trial court has abused its discretion, an appellate court will not disturb a trial court's decision concerning the admission of evidence. See id. Accordingly, our inquiry is limited to whether the trial court acted unreasonably, arbitrarily, or unconscionably in admitting or excluding evidence. See Calderon v. Sharkey (1982), 70 Ohio St.2d 218, 222,436 N.E.2d 1008.
 B. Evid.R. 404 and 405 {¶ 39} The evidence that appellant sought to have admitted is generally referred to as "character evidence." Evid.R. 404 governs the admission of "character evidence." It provides in pertinent part:
 {¶ 40} "A) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
 {¶ 41} "* * *;
 {¶ 42} "(2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable." Evid.R. 404(A)(2).
 {¶ 43} However, although a defendant is permitted to present evidence of a victim's character, that evidence is subject to Evid.R. 405, which "sets forth what form such evidence may take." See State v.Barnes, 94 Ohio St.3d 21, 23, 2002-Ohio-68, 759 N.E.2d 1240. Evid.R. 405 provides:
 {¶ 44} "(A) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
 {¶ 45} "(B) Specific instances of conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct." Evid.R. 405.
 {¶ 46} Thus, in this regard, the rules recognize two separate types of admissible evidence: 1) opinion testimony concerning a victim's reputation for violence, and 2) testimony concerning a victim's specific acts of violence. See id. A defendant is permitted to enter into evidence reputation or opinion testimony concerning the character of the victim. See Evid.R. 404(A)(2) and 405(A). However, testimony concerning specific instances of conduct by the victim is admissible in only limited circumstances (e.g., when the victim's character "is an essential element of a charge, claim, or defense").
 C. Two Reasons for Admissibility {¶ 47} Appellant asserts that there are two independent reasons why the testimony concerning the victim's reputation for violence and the victim's specific acts of violence is admissible.
 1. The Victim was the Aggressor {¶ 48} First, appellant claims that both forms of evidence were admissible to show that on the day of the incident in question, the victim was the aggressor and that appellant did not create the situation that gave rise to the altercation. Appellant readily admits that if the trial court was correct in determining that self-defense was not at issue in the case, as we have already found, the evidence submitted for the purpose of proving the affirmative defense was rendered irrelevant. Appellant's argument in this regard is moot. Accordingly, we need not address whether this testimony evidence was admissible in order to prove that the victim was the aggressor.
 2. Appellant's State of Mind {¶ 49} Second, appellant claims that both forms of evidence are admissible to show his "state of mind." In arguing this position, appellant exclusively relies on Judge Harsha's concurring opinion in Statev. Williamson (Apr. 9, 1998), Washington App. No. 97CA5. In Williamson, the trial court gave the self-defense instruction to the jury, but did not allow the defendant to testify to specific acts of violence engaged in by the victim in that case. On appeal, the defendant argued that he should have been allowed to testify as to specific acts of violence by the victim because those acts were relevant to his "state of mind" (i.e., the reasonableness of his actions). We agreed with the defendant. In his separate opinion, Judge Harsha noted that Evid.R. 404 or 405 did not govern the defendant's testimony concerning the victim's specific acts of violence and that that testimony was admissible to show his "state of mind." See id.
 {¶ 50} However, the factual situation in Williamson is markedly different from the one presently before us. In Williamson, the evidence was still relevant, going towards the issue of self-defense and whether the defendant's actions were reasonable — that under the circumstances the defendant did not use excessive force. In the case sub judice, appellant is arguing that the testimony concerning the victim's propensity for violence and the victim's specific acts of violence was relevant and admissible absent a valid claim of self-defense.
 {¶ 51} Appellant apparently has misunderstood this Court's use of the term "state of mind" in Williamson. As we have noted above, "state of mind" under the present circumstances and the situation in Williamson
refers to the defendant's reasonable belief in the necessity of the use of force. See 3 Katz Gianelli, Baldwin's Ohio Practice Criminal Law (1996), Section 88.4; see, also, State v. Baker (1993), 88 Ohio App.3d 204,623 N.E.2d 672. The phrase "state of mind" in the context of self-defense is substantially different from what is generally referred to as mens rea or a culpable mental state. We are at a loss as to how this testimony would still be relevant absent the self-defense claim being at issue. See Gianelli Snyder, Baldwin's Ohio Practice Evidence (2001) 215, Section 404.6. Again, appellant's argument in this regard is moot.
 {¶ 52} Accordingly, the trial court did not abuse its discretion by instructing the jury to disregard the testimony concerning the victim's reputation for violence or specific acts of violence. Thus, we overrule appellant's Second Assignment of Error.
 III. Denial of the Motion for Continuance {¶ 53} Previously, we noted in our discussion that following the establishment of a trial date, appellant chose to change counsel. That change took place approximately one month before the commencement date of the trial. Once appellant's new counsel took on appellant's case, he filed a motion to continue with the trial court, arguing that he needed more time to prepare for trial because he had just become involved in the case. Both appellant and his counsel were aware of the trial date before the change of counsel took place.
 {¶ 54} Appellant now argues that the trial court erred by denying him a continuance.
 {¶ 55} A trial court's decision to grant or deny a continuance is left to the sound discretion of the trial court. See State v. Mason,82 Ohio St.3d 144, 155, 1998-Ohio-370, 694 N.E.2d 932; State v. Bomar, Scioto App. No. 00CA2703, 2000-Ohio-1974. A trial court's decision on this issue will not be reversed on appeal absent a showing that the trial court abused its discretion. See id.; State v. Meredith (June 22, 2000), Lawrence App. No. 99CA2. An abuse of discretion is more than a mere error of law, it connotes an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. See State v. Montgomery
(1991), 61 Ohio St.3d 410, 413, 575 N.E.2d 167, citing State v. Adams
(1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.
 {¶ 56} Appellant and his counsel acknowledge that, before the change of counsel was made, they were aware of the technical nature of the case (i.e., the expert knowledge needed to understand the cause of death espoused by the state — subarachnoid hemorrhage). Appellant appears to acknowledge that no attempt was made to procure an expert witness. In his brief, he states, "In retrospect, it is now clear that the Defendant needed an expert witness to testify concerning the current state of knowledge of the etiology of subarachnoid hemorrhaging."
 {¶ 57} Misgivings about the choices that one has made during the trial court proceedings do not rise to the level of prejudicial error. Accordingly, we find that the trial court did not abuse its discretion in denying appellant a continuance.
 {¶ 58} Appellant's Third Assignment of Error is overruled.
 Conclusion {¶ 59} Appellant's assignments of error are overruled in toto and the judgment of the trial court is affirmed.
Judgment affirmed.
Abele, P.J.: Concurs in Judgment Opinion as to Assignments of Error I III; Concurs in Judgment Only as to Assignment of Error II.
Harsha, J.: Concurs in Judgment Opinion as to Assignment of Error I; Concurs in Judgment Only as to Assignments of Error II 
III.
[1] "Deadly force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person" that "carries a substantial risk that it will proximately result in the death of any person." R.C. 2901.01(A)(1) and (2). Based on the testimony of Dr. Yates, the trial court found that appellant's actions toward Mr. Compher did not carry a "substantial risk" that the victim's death would result from the punches. See R.C. 2901.01(A)(8). Generally, shoving and hitting without use of a weapon is not considered deadly force. See Statev. Simbro (May 18, 1998), Highland App. No. 97CA0939.